**Michael J. FOLEY, Plaintiff, Appellant,**

v.

**RUST INTERNATIONAL,
Defendant, Appellee.**

**Nos. 89–1159, 89–1160 and 89–1250.**

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1990.

Decided April 19, 1990.

John J. McGivney, with whom Thomas D. Burns, Darrell Mook, and Burns and Levinson, Boston, Mass., were on brief for appellant.

Kenneth L. Carson, with whom Sugarman, Rogers, Barshak and Cohen, Boston, Mass., were on brief for appellee.

Before BREYER, Circuit Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiff-appellant Michael J. Foley (Foley) appeals from a judgment notwithstanding the verdict after a jury had found in his favor in a negligence action against defendant-appellee Rust International Corp. (Rust). After reviewing the record, we affirm the J.N.O.V.

I.

Foley was injured when he fell from duct work on which he was working while employed at a construction site in Andover,

Massachusetts. At the time of the accident, Foley was an apprentice boilermaker for the Riley–Stoker Corporation (Riley). Riley was working at the site pursuant to a subcontract with the general contractor, Rust.

Foley sued Rust claiming that it had a duty separate and independent from Riley to exercise due care toward him. This duty was breached by Rust, Foley claims, because it failed to warn him that climbing the duct work without a ladder was dangerous or, alternatively, by failing to provide a ladder.

After the jury returned a verdict for Foley, Rust made a motion, which it had properly preserved, for J.N.O.V., claiming that it did not exercise sufficient control over the workplace to have a duty to Foley. That motion was granted. Foley appeals asserting that the jury had sufficient evidence to find that Rust retained enough control of the job site to be liable for Foley's injuries.

The only issue for our consideration is whether, as a matter of law, there was enough evidence for the jury to find that Rust exercised sufficient control over the safety of Riley's employees to be liable for Foley's injuries.

## II.

On a motion for judgment notwithstanding the verdict,

> the trial judge must view all of the evidence and inferences flowing therefrom in the light most favorable to the nonmoving party. Such a motion should be granted only if, as a matter of law, no conclusion but one can be drawn. In reviewing the trial court's decision, we are obliged to look at the evidence in the same manner.

*Austin v. Lincoln Equipment Associates, Inc.*, 888 F.2d 934, 937 (1st Cir.1989).

In this diversity jurisdiction case, both sides concede that Massachusetts law should be applied. In particular, as both sides emphasize in their briefs, the case turns on the meaning of *Corsetti v. Stone Co.*, 396 Mass. 1, 483 N.E.2d 793 (1985). In

*Corsetti*, the Supreme Judicial Court of Massachusetts held a general contractor liable for the injuries of the employee of a subcontractor because the general contractor was contractually obligated to "initiate, maintain and supervise all safety precautions and programs in connection with the work," and it had retained the authority and control necessary to carry out that responsibility. *Corsetti*, 483 N.E.2d at 796 n. 4. In addition, there was testimony that the general contractor's supervisor had (and exercised) authority to examine safety devices at the site and to direct the subcontractors to remedy safety violations. *Id.* at 799. In its opinion, the Court adopted the rule of § 414 of the Restatement (Second) of Torts (Restatement):

> one who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Corsetti*, 483 N.E.2d at 798.

The specific question for decision is whether Rust retained sufficient control over the work within the meaning of *Corsetti* and the Restatement to be liable for Foley's injuries.

We begin with the language of Comment C to § 414 of the Restatement:

> It is not enough that [the general contractor] has merely a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, to prescribe alterations or deviations. such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to his operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work his own way.

The key issue, according to the Comment, is whether the subcontractor was "entirely free" to do the work in his own way.

Cases in other jurisdictions that have examined specific applications of the "retains control" language have followed Comment C. *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 408 (5th Cir.1989) ("The fact that [the owner] periodically inspected the job site to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control.") (citations omitted); *Thomas v. InterNorth, Inc.*, 790 F.2d 1253, 1254 (5th Cir.1986); *See also, Wilkins v. P.M.B. Systems Engineering, Inc.*, 741 F.2d 795, 799 (5th Cir.1984); *Flynn v. United States*, 631 F.2d 678, 680 (10th Cir. 1980). To get past the Comment, Foley must show that Rust maintained more than general control over Riley.

Rust had significantly less control over safety and the job site than the general contractor in *Corsetti*. The only evidence Foley produced at trial on the issue of Rust's control over Riley was the contract between the two companies and the testimony of Michael J. Bryant (Bryant), Rust's safety coordinator for the Andover project. The contract between Rust and Riley stated Riley's obligation explicitly:

> Subcontractor alone is obligated to provide for the safety of his employees at the jobsite. Subcontractor agrees to perform the work in a safe manner, to provide a safe place to work, and to abide by and enforce all federal, state, and local safety laws, rules or regulations governing the performance of the work. Subcontractor shall furnish all apparel, materials, equipment, tools, labor, instruction, and supervision necessary for the safety of his employees and his compliance with these safety laws.

The contract also required Riley to conform to all of Rust's safety regulations [1] and cooperate with the other safety programs in operation at the job site. Furthermore, Riley's safety program was subject to review and acceptance by Rust. But under the explicit terms of the contract, the only option available to Rust, upon noticing a safety violation, was to ask that work be suspended. Moreover, the contract emphasized that "nothing in [the section on safety] ... shall be construed as shifting responsibility for safety from the subcontractor."

Bryant testified about the organization of the North Andover job. He said that he was the coordinator for the job for Rust. Unlike other projects in which he had been involved, this job was structured so that the subcontractors performed all of the work. He testified that, as he understood his duties, he was to report any safety violations to the subcontractor's safety supervisor. When pressed during cross-examination, he did allow that if he saw a worker in imminent danger he might order that work be stopped. Bryant also made suggestions for topics to be discussed at the regular safety meetings of the subcontractors, although he did not attend those meetings. He testified that the safety rules incorporated into the contract were the OSHA rules. Finally, Bryant estimated that his safety suggestions were followed about half the time.

This evidence is insufficient as a matter of law to hold Rust liable for Foley's injuries. Rust did not, within the meaning of the Restatement or *Corsetti*, retain sufficient control over the subcontractor. All Rust retained was the general right, referred to in Comment C, to stop the work. That is not enough control to impose liability, particularly when the contract is explicit that safety is the responsibility of the subcontractor. There was no evidence that Rust retained a right of supervision over Riley such that Riley was not entirely free to do the work in its own way. *See* Comment C.

The judgment of the District Court is AFFIRMED.

---

1. Despite the emphasis that Foley puts on the language of the contract and the safety rules, as far as we can tell, and as Judge Zobel states

explicitly, no safety rules were admitted into evidence.