Francis X. St. Germaine, Third, & others[1] *vs.* Michael
E. Pendergast & others.[2]

Barnstable. October 10, 1991. - January 14, 1992.

Present: Liacos, C.J., Wilkins, Lynch, O'Connor, & Greaney, JJ

*Negligence*, Construction work, Contractor, Employer, One owning or con-
trolling real estate, Violation of regulation, Causing loss of consortium.
*Parent and Child*, Consortium. *Practice, Civil*, Instructions to jury.
*Workers' Compensation Act*, Action by parent. *Statute*, Construction.

Provisions of G. L. c. 143, § 51, imposing liability on the owner of a build-
ing for damages caused by a violation of the State Building Code, were
not applicable to the owner of a single family home that was under
construction. [618-619]
A homeowner proceeding under the homeowner's license exemption provi-
sion of the State building code, who applied for and received in his own
name a building permit to construct a single family home, did not
thereby assume the duties of a licensed construction supervisor or a
general contractor, with respect to liability for violations of the code.
[619-621]
At the trial of negligence claims against the owner of a single family home
that was under construction, the judge correctly instructed the jury
concerning the defendant's supervisory duties under the homeowner's
license exemption provision of the State Building Code and under the
building permit he had secured in his own name, as well as the defend-
ant's common law responsibility as employer of an independent contrac-
tor. [621-623]
Claims under G. L. c. 231, § 85X, for loss of the filial consortium of the
plaintiffs' financially dependent child, were barred by G. L. c. 152,
§ 24, the exclusive remedy provisions of the Workers' Compensation
Act. [623-628]

Civil action commenced in the Superior Court Depart-
ment on October 10, 1989.

---

[1]Francis X. St. Germaine, Jr. and Bette J. St. Germaine.

[2]Edmund V. Lacey and Charles E. Lacey, partners doing business as
Lacey & Lacey Custom Builders (Lacey & Lacey).

A motion for summary judgment was heard by *Gerald F. O'Neill, Jr., J.*, and the remaining claims were tried before *John M. Xifaras, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Paul W. Shaw* (*Dale C. Schneider* with him) for the plaintiffs.

*Brian J. Mone* (*George E. Clancy* with him) for Michael E. Pendergast.

*James W. Stone* for Edmund V. Lacey & another.

*James H. Tourtelotte* & *Nancy Frankel Pelletier*, for Doane & Williams, Inc., amicus curiae, submitted a brief.

GREANEY, J. The plaintiff, Francis X. St. Germaine, III (Kip),[3] brought an action in the Superior Court against the defendant, Michael E. Pendergast, seeking to recover damages for personal injuries received when a wall being erected in connection with the construction of a single family home for Pendergast fell on him.[4] Kip's parents, the plaintiffs Francis X. St. Germaine, Jr., and Bette J. St. Germaine (St. Germaines), sought in the action to recover for the loss of filial consortium of their son pursuant to G. L. c. 231, § 85X (1990 ed.), from Pendergast and his employer, Lacey & Lacey.

As far as now relevant, the plaintiffs sought recovery on three claims. The plaintiffs' first claim was based on common law and alleged essentially that Pendergast had negligently failed to ensure that the construction of the home was conducted in a safe manner. A second claim alleged liability based on violations of the State Building Code and related provisions of law. In this claim, the plaintiffs asserted that Pendergast was liable for damages under the provisions of G. L. c. 143 § 51 (1990 ed.). In addition, the plaintiffs as-

---

[3]This plaintiff was referred to throughout the trial by his diminutive, "Kip," and we shall refer to him as Kip in this opinion to distinguish him from his father, the plaintiff Francis X. St. Germaine, Jr.

[4]At the time of the accident, Kip was employed by an independent contractor, Lacey & Lacey, and he was barred by G. L. c. 152, § 24 (1990 ed.), from bringing a direct tort action against his employer.

serted that Pendergast, by acting as his own contractor and obtaining a building permit and other documents in his own name to construct the home, voluntarily assumed the role of a [licensed] "construction supervisor" and "general contractor," which made him responsible for any violations by Lacey & Lacey of the State Building Code and related regulations. In a third claim, the St. Germaines alleged that Lacey & Lacey's negligence and violations of law had caused them the loss of filial consortium.

A judge of the Superior Court allowed Pendergast's motion for summary judgment as to the theories encompassed in the second claim described above. The remaining common law negligence and consortium claims were tried to a jury before a different judge of the Superior Court. The jury found that Pendergast had not been negligent, and that Lacey & Lacey had been negligent and was liable to the St. Germaines for loss of filial consortium. The plaintiffs appeal from the entry of summary judgment and from the judgment on the jury verdict finding that Pendergast was not negligent. Lacey & Lacey appeals from the judgment finding it liable for loss of filial consortium. We transferred the case to this court on our own motion. We affirm the judgment for Pendergast and reverse the judgment against Lacey & Lacey.

The evidence provides the following background. On November 18, 1988, Pendergast filed both an application for a building permit and a homeowner license exemption form with appropriate officials of the town of Falmouth to construct a single family home on his property. The homeowner license exemption allowed Pendergast to proceed with the construction of his home without hiring a general contractor or a licensed construction supervisor. See 780 Code Mass. Regs. § 109.1.1.[5] Pendergast received his building permit in due course. He proceeded to hire several subcontractors to

---

[5]This provision of the State Building Code requires anyone engaged in the construction of structural elements of buildings to be licensed in accordance with an elaborate set of licensing requirements. (See 780 Code Mass. Regs. §§ 1.1-3.5.) The provision then states the following exemption:

perform various aspects of the work, including Lacey & Lacey to perform the rough framing. As has been mentioned, Kip was employed by Lacey & Lacey as a laborer. On June 15, 1989, after about one week of work on the project, the Lacey & Lacey crew had completed framing and sheathing the end walls, with attached gable ends on the second floor. The eight-man crew lined up in a row and began to lift a wood frame gable end wall into place using the "curl and press" method.[6] As the crew began the process of lifting the wall, they noticed that it was top heavy and decided to bring it back down. While bringing the wall down, the crew lost control of it. The wall fell on Kip, trapping him beneath it. The accident rendered Kip a paraplegic.

1. *Summary judgment - G. L. c. 143, § 51.* Summary judgment for Pendergast removed the plaintiffs' claim that he was liable for damages under G. L. c. 143, § 51 (1990 ed.).[7] The plaintiffs argued, in substance, that Pendergast as "the owner" of a "building" was liable for violations of the State Building Code and other regulations allegedly commit-

---

"Exception: Any Home Owner performing work for which a building permit is required shall be exempt from the provisions of this section; provided that if a Home Owner engages a person(s) for hire to do such work, that such Home Owner shall act as supervisor.

"For purposes of this section only, a "Home Owner" is defined as follows: Person(s) who owns a parcel of land on which he/she resides or intends to reside, on which there is, or is intended to be, a dwelling of six or less units, attached or detached structures accessory to such use and/or farm structures. A person who constructs more than one home in a two-year period shall not be considered a home owner."

[6]The "curl and press" method is a method for physically lifting a wall into place. The crew gets underneath the wall and curls it upwards to a certain point, then the crew switches sides and presses the wall up into position.

[7]This statute reads in relevant part as follows:

"The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions."

ted by Lacey & Lacey by reason of its failure to provide a safe workplace and working conditions for their employees. See 780 Code Mass. Regs § 3000.6; 454 Code Mass. Regs. §10.03(1)(a) and (b).

General Laws c. 143, § 51, can, in appropriate circumstances, provide a basis for civil liability in damages. See *Repucci* v. *Exchange Realty Co.*, 321 Mass. 571 (1947). It is apparent, however, from the specific types of structures mentioned in § 51 ("place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment"), and the definition contained in G. L. c. 143, § 1 (1990 ed.), for the general term "building,"[8] that § 51 is not meant to apply to a single family home that is under construction. Summary judgment was correctly granted on this claim.[9]

2. *Summary judgment - State Building Code and other provisions.* There was also removed from the case by summary judgment for Pendergast the plaintiffs' claim that provisions of the State Building Code allowing a homeowner an exemption from the requirement of hiring a licensed construction supervisor, see note 5 *supra*, and the terms of the homeowner license exemption received by Pendergast imposed all of the duties of such a supervisor on him, and further that, by taking out a building permit in his own name, Pendergast assumed all of the duties imposed on a general contractor under the State Building Code, including the duty

---

[8]This definition reads as follows:

" 'Building,' a combination of any materials, whether portable or fixed, *having a roof*, to form a structure for the shelter of persons, animals or property. For the purpose of this definition 'roof' shall include an awning or any similar covering, whether or not permanent in nature. The word 'building' shall be construed where the context requires as though followed by the words 'or part or parts thereof.' " (Emphasis added.)

[9]This ground for summary judgment was not raised before the motion judge. Counsel for Pendergast argues it on appeal in support of the grant of summary judgment. The ground is obvious and can be appropriately used to uphold the judge's ruling. See *Alholm* v. *Wareham*, 371 Mass. 621, 625 (1976); *Greeley* v. *Zoning Bd. of Appeals of Framingham*, 350 Mass. 549, 551 (1966).

to provide a safe workplace. Thus, the plaintiffs argue (according to their reply brief) that "these [provisions and documents] . . . defined the scope of the duty owed by the person who assumes the role of a construction supervisor or contractor and impose on those persons a non-delegable duty to assure compliance with the State Building Code. . . . As such, the regulations expand on the common law duty of a homeowner to maintain property in a safe condition . . . ."

We reject, as an initial matter, the notion that any of the provisions of the Building Code and other rules and regulations relied on by the plaintiffs create a new duty making a homeowner liable for violations of the State Building Code. "We do not construe a safety statute to establish a new civil cause of action without express terms or clear legislative intent to that effect." *Lindsey* v. *Massios*, 372 Mass. 79, 84 (1977), citing *Richmond* v. *Warren Inst. for Sav.*, 307 Mass. 483, 485 (1940). See also *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976); *Dolan* v. *Suffolk Franklin Sav. Bank*, 355 Mass. 665, 667 (1969). Nor do violations of a statute or regulations constitute negligence per se; they are only some evidence of negligence. See *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 139-140 (1985); *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 28 (1979); *Perry* v. *Medeiros*, *supra* at 841.

The various provisions of the State Building Code and other rules and regulations relied upon by the plaintiffs could be considered as evidence of negligence with regard to duties imposed by common law on Pendergast, a point recognized by the trial judge and explained in his jury instructions (which we shall discuss in a moment). Those sources, however, did not create a new "non-delegable duty" to assure compliance with the State Building Code.

Language in the homeowner license exemption that the homeowner is "responsible" for compliance with the State Building Code is to be understood in light of the additional provision in the document that the homeowner act as a "supervisor" of the construction and "agree[] to be present on the site at some point to approve construction . . . involving

. . . Rough framing [and] Finished framing . . . ." This language also does not create a new "non-delegable" duty, or impose on Pendergast the role of a licensed construction supervisor. As the regulations governing a licensed construction supervisor make clear, see 780 Code Mass. Regs. §§ 1.1-3.5, a person holding such a license is a highly trained individual, with at least three years of experience, whose practice is regulated by the Board of Building Regulations and Standards. A homeowner building his own home under an exemption is recognized by the State Building Code as a nonexpert, see note 5, *supra*, who is involved only in periodic supervising of a less complex construction job. The terms of the homeowner license exemption constituted evidence as to whether Pendergast acted properly in monitoring his subcontractors. Similarly, the building permit did not impose on Pendergast any duties that might apply to an experienced general contractor. Summary judgment for Pendergast was proper on the plaintiffs' claims discussed above, and the case was correctly put to the jury on theories of common law negligence.

3. *Jury instructions.* The plaintiffs claim that the trial judge erred in refusing to instruct the jury to hold Pendergast to the standard of a reasonable contractor and licensed construction supervisor. The plaintiffs also argue that the judge should not have instructed the jury in accordance with the principles set forth in *Corsetti* v. *Stone Co.*, 396 Mass. 1 (1985), concerning the duty owed by an employer of an independent contractor. We find no error in the jury instructions.

The trial judge told the jury that the plaintiffs claimed that "Pendergast was negligent in the supervision of . . . Lacey & Lacey," and negligent in the way "he acted . . . [in] building his own house under the homeowner [license] exemption." The trial judge went on to define the concepts of duty and ordinary negligence as those concepts might be found to apply to Pendergast in the circumstances presented by the evidence, indicating that, as to this defendant, the safety provisions, rules and regulations placed in evidence (except for an OSHA violation by Lacey & Lacey) could be considered, if the jury chose, as evidence of negligence. The

St. Germaine *v.* Pendergast.

trial judge further instructed at some length on the effect of the homeowner license exemption and the building permit and Pendergast's obligations under these documents to act as a supervisor over the work.[10]

The trial judge also carefully explained Pendergast's responsibility as the employer of an independent contractor. The judge told the jury that, if Pendergast retained the right to control the work, he had a duty to exercise that control with reasonable care. The judge then described the level of control necessary to support a finding of negligence against the employer of an independent contractor. The instructions given correctly stated the law generally in accordance with *Corsetti v. Stone Co., supra* at 9-11, in which we adopted the principles stated in § 414 of the Restatement (Second) of Torts (1965). That section provides: "One who entrusts work to an independent contractor, *but who retains the control of any part of the work*, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care" (emphasis added). The judge's instructions also stated the principles in comment c of § 414 of the Restatement to illustrate the degree of control

---

[10]The trial judge went further than the evidence may have required in giving the following instruction on the effect of the building permit:

> "Let me further say to you that in obtaining the building permit, Mike Pendergast listed himself as the contractor for the construction of the building at 29 Longview Road. A homeowner constructing his own home is subject to the requirements of the construction industry's rules and regulations and has a responsibility to ensure a safe workplace and shall not permit persons to work under conditions which are not in compliance with or prohibited by the rules and regulations."

The trial judge also went further than the evidence may have required in connection with the effect of the homeowner license exemption when he told the jury that "[t]he duties of Michael Pendergast are established by the State Building Code" which require a safe workplace "to prevent construction accidents" and "compliance with the State Building Code and other applicable codes, by laws, rules and regulations . . ."

These instructions went a long way to giving the plaintiffs the benefit of the theories that they espoused in their second claim which had been eliminated from the case by the grant of summary judgment.

necessary for liability.[11] See *Foley* v. *Rust Int'l*, 901 F.2d 183, 185 (1st Cir. 1990).

Contrary to the various arguments of the plaintiffs, we are satisfied that the jury instructions were at least consistent with the theories raised by the evidence, and, in several respects, more beneficial to the plaintiffs than the evidence warranted. See note 10, *supra.* The instructions permitted the jury to find Pendergast liable for damages if they decided that he had committed direct acts of negligence against Kip, acted negligently in the manner in which he proceeded under the homeowner license exemption and building permit, or been negligent in connection with any control he retained over Lacey & Lacey on the performance of the work. The plaintiffs were not entitled to different instructions, and they have not demonstrated error in the manner in which the law was explained to the jury.

4. *Loss of consortium claim against Lacey & Lacey.* The St. Germaines recovered damages against Lacey & Lacey for loss of their son's consortium under G. L. c. 231, § 85X (1990 ed.), which provides that "[t]he parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury." Lacey & Lacey moved to dismiss the claim, arguing that because Kip's injury had been compensated under the Workers' Compensation Act, the St. Germaines' consortium claim was barred by the exclusivity provisions of that Act, G. L. c. 152,

---

[11]This comment reads as follows:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

§ 24 (1990 ed.).[12] Lacey & Lacey's motion to dismiss was denied, as were two motions at trial for a directed verdict that raised the same issue. The claim was submitted to the jury solely on the issue of liability, the parties having stipulated that Kip was financially dependent on his parents at the time of the accident, and that the St. Germaines had incurred damages in at least the amount of $100,000 (the value of Lacey & Lacey's liability insurance). On appeal, Lacey & Lacey renew the argument that the St. Germaines' cause of action is barred by G. L. c. 152, § 24. We agree.

As amended through 1986, G. L. c. 152, § 24, the "exclusive remedy" section of the Workers' Compensation Act, provides that a worker's waiver of common law rights to recover damages for personal injuries also serves to bar common law actions brought by other parties for the loss of the injured worker's "consortium, parental guidance, companionship or the like." See note 12, *supra*. See *Foley* v. *Boston Hous. Auth.*, 407 Mass. 640, 641 n.3 (1990); *Corrigan* v. *General Elec. Co.*, 406 Mass. 478, 478-479 (1990); *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 611 n.1 (1989); *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 84 n.2 (1987); *Powell* v. *Cole-Hersee Co.*, 26 Mass. App. Ct. 532, 533 (1988); *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 544 n.6 (1987). The Legislature amended the Act so as to exclude consortium claims in response to this court's decision in *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507,

---

[12]General Laws c. 152, § 24 (1990 ed.), provides, in relevant part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . . If an employee has not given notice to his employer that he preserves his right of action at common law as provided by this section, the employee's spouse, children, parents and any other member of the employee's family or next of kin who is wholly or partly dependent upon the earnings of such employee at the time of injury or death, shall also be held to have waived any right of action at common law against such employer for damage due to loss of consortium, parental guidance, companionship or the like, when such loss is a result of any injury to the employee that is compensable under this chapter."

525, 530 (1980), holding that the exclusive remedy provision of the Workers' Compensation Act then in effect barred only the claims of the injured worker himself.

General Laws c. 231, § 85X, the loss of filial consortium statute, was also enacted as a direct legislative response to a decision of this court. In *Norman* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 303, 308 (1988), an action by parents for the loss of consortium of their nineteen year old child who was injured when negligently struck by a bus, we declined to recognize a right of recovery for the loss of filial consortium. In response, the Legislature enacted G. L. c. 231, § 85X, as inserted by St. 1989, c. 259, which explicitly provides for such a cause of action. *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991). *Monahan* v. *Methuen*, 408 Mass. 381, 388 (1990).

The St. Germaines argued successfully to the trial judge that the two statutes apply to two mutually exclusive classes of claimants. As the St. Germaines construe the filial consortium statute, only parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action. In contrast, the exclusivity provision of the Workers' Compensation Act bars only the claims of persons financially dependent on the injured worker ("the employee's spouse, children, parents and any other member of the employee's family or next of kin who is wholly or partly dependent upon the earnings of such employee . . . shall also be held to have waived any right of action"). The St. Germaines construe the phrase "who is wholly or partly dependent" to modify the employee's "spouse, children, [and] parents" as well as "any other member of the employee's family or next of kin." The statutes are not in conflict by reason of their converse dependency clauses, the St. Germaines argue, and the consortium claim is therefore not barred.[13]

---

[13]In support of their argument that the filial consortium statute is not in conflict with the exclusive remedy provision of c. 152, the plaintiffs cite language from the exclusivity provision to the effect that it bars only "common law" claims. Because c. 231, § 85X, was a statutory response to our denial of recovery in a common law action, we think the right of recov-

We rejected this interpretation of the exclusivity provision of G. L. c. 152, § 24, in *Russell* v. *Boston Wyman, Inc.*, 410 Mass. 1005, 1006 (1991).[14] In that case, a financially independent husband whose wife was injured at work sought to bring a loss of consortium claim, arguing, as the St. Germaines do here, that G. L. c. 152, § 24, bars only the claims of dependent persons. We concluded that the phrase "who is wholly or partly dependent" modifies only "any other member of the employee's family or next of kin," and not "spouse, children, [and] parents," and we held as a consequence that consortium claims by spouses, children and parents are barred regardless of the economic relationship of the claimant to the injured worker. *Id.*

To determine the proper interrelation of the two statutes, we interpret each statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 (1984), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Where two statutes are allegedly inconsistent, we construe them "in a manner which gives reasonable effect to both statutes and creates a consistent body of law," *Boston* v. *Board of Educ.*, 392 Mass. 788, 792 (1984), and we will find an implied repeal of one statute by another only when the prior statute is "so repugnant to and inconsistent with the later enactment . . . that both cannot stand," *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718 (1986), quoting *Doherty* v. *Commissioner of Admin.*, 349 Mass. 687, 690 (1965).

---

ery granted by that statute falls within the ambit of claims eliminated by the exclusivity provision.

[14]Our decision in *Russell* was written after the conclusion of the trial in this case.

Applying these principles to the statutes before us, we conclude that G. L. c. 231, § 85X, does not repeal by implication the exclusivity provision of the Workers' Compensation Act. As we have noted in *Leibovich* v. *Antonellis, supra* at 577, and *Monahan* v. *Methuen, supra* at 388, in enacting c. 231, § 85X, the Legislature intended to grant to parents the same right of action already enjoyed by spouses, see *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 154, 165 (1973), and by children, see *Ferriter* v. *Daniel O'Connell's Sons, Inc., supra* at 516. Previously, in its 1985 amendment of the Workers' Compensation Act, St. 1985, c. 572, § 35, the Legislature subordinated the consortium rights of spouses, children, parents and others to the exclusivity provision of that Act. We are unwilling to conclude that in enacting G. L. c. 231, § 85X, the Legislature intended an implied repeal of G. L. c. 152, § 24, with respect to a very small class of persons (parents who are the financial support of children whose injuries are compensable under the Workers' Compensation system), particularly when the decision that prompted the Legislature to enact c. 231, § 85X, *Norman* v. *Massachusetts Bay Transp. Auth., supra*, did not involve a member of that class.

Our interpretation of the two statutes gives effect to both, and it creates a consistent body of law: spouses, children and parents are equally entitled to bring loss of consortium claims, and those claims are equally barred where the injury is compensable under G. L. c. 152. It is also consistent with the "legislative intent that the remedies provided by c. 152 for violations of that chapter should remain within the system and should be exclusive of all other common law and statutory remedies." *Kelly* v. *Raytheon, Inc.*, 29 Mass. App. Ct. 1000, 1002 (1990). We therefore hold that the St. Germaines' claim under G. L. c. 231, § 85X, for the loss of Kip's consortium is barred by G. L. c. 152, § 24, the exclusive remedy provision of the Workers' Compensation Act.

5. *Disposition.* The judgment for the defendant Pendergast on the plaintiffs' claims against him is affirmed. The judgment for the plaintiffs Francis X. St. Germaine, Jr., and Bette J. St. Germaine against Lacey & Lacey awarding

damages for loss of consortium is reversed. On that claim, judgment is to be entered for the defendant Lacey & Lacey.

*So ordered.*