ANGELOS DILAVERIS & others[1] *vs.* W. T. RICH COMPANY, INC.

No. 94-P-345.

Middlesex. May 9, 1995. - August 18, 1995.

Present: PERRETTA, KASS, & IRELAND, JJ.

Further appellate review granted, 421 Mass. 1105 (1995).

*Practice, Civil*, Directed verdict, Judgment notwithstanding verdict. *Negligence*, Construction work, Scaffolding. *Contract*, Construction contract.

The general contractor on a construction project did not, under the general contract or the contract with its subcontractor, retain sufficient right to control the work of the subcontractor such that a duty of care arose with respect to an employee of the subcontractor, and in a negligence action brought by the employee the judge should have allowed the general contractor's motions for directed verdict and for judgment notwithstanding the verdict. [117-121]

CIVIL ACTION commenced in the Superior Court Department on September 24, 1990.

The case was tried before *George A. O'Toole, Jr.,* J., and a motion for a new trial was heard by him.

*Andre A. Sansoucy* (*John W. Brister* with him) for the plaintiffs.

*Alice Olsen Mann* for the defendant.

IRELAND, J. Angelos Dilaveris (Angelos), his wife, Eva, and his child, Ianoula, brought this action in the Superior Court against the defendant, W. T. Rich Company, Inc. (Rich), to recover damages for injuries sustained by Angelos when he fell from a scaffold. Rich had contracted with the city of Boston to serve as the general contractor on a project involving the renovation of three Boston school buildings. Angelos was employed by Chios Painting & Contracting

_____

[1] Eva Dilaveris and Ianoula Dilaveris.

(Chios), a subcontractor on the project. Eva and Ianoula Dilaveris joined as loss of consortium plaintiffs.

Following a trial, a jury found Angelos comparatively negligent in the accident and allocated fifty-five percent of the fault to him. Rich's negligence for the plaintiff's injuries was pegged at forty-five percent. The jury further assessed damages of $355,000 for Angelos, $10,000 for Eva and $4,500 for Ianoula.[2] The plaintiffs appeal from the judgment and from the denial of their motion for a new trial, alleging various errors in the conduct of the trial and in the jury deliberation process.

Rich has cross appealed and contends that, under a directed verdict standard, there was insufficient evidence from which the jury could conclude that Rich owed a duty to Angelos in the first instance, or that any existing duty was breached. Accordingly, Rich argues that the trial court improperly denied its motions for directed verdict and its motion against the consortium claimants for judgment notwithstanding the verdict.

We summarize the facts. In 1990, Rich contracted with the city of Boston to renovate three public schools. Chios, who was responsible for scraping and painting the ceilings and walls in the schools, was a subcontractor on the project chosen directly by the city. Angelos was employed by Chios. On the morning of the accident, Angelos was engaged in scraping the ceilings of classrooms at one of the schools. He worked standing on six foot high scaffolding in order to reach the ceilings in the rooms. The scaffolding belonged to his employer. When he got to the fifth room that he worked on that morning, he noticed two scaffolds already set up in the room. Rather than replacing them with his employer's scaffold, he decided to use the ones already there. The parties agree that this scaffold (like those owned by Chios) was not equipped with a guardrail as required by Federal safety regulations and by Rich's own internal standards. Once on the scaffold,

---

[2]As Angelos was more than fifty percent responsible for his injuries, judgment was entered in favor of Rich. Judgment as to the consortium plaintiffs was entered against Rich.

Angelos began to scrape the ceilings in the room. Shortly thereafter, he fell from the scaffold and sustained injuries to his head, arms, pelvis, and lungs.

1. *Duty of care.* Because it is potentially dispositive of the entire action, we first take up Rich's claim that its contractual relationship with the city and with Chios did not confer upon Rich a sufficient right of control over the safety aspects of the job as to create a duty of reasonable care toward Angelos. At trial, following presentation of the plaintiffs' case, Rich moved for a directed verdict on the question of duty owed and renewed that motion at the close of evidence. Rich followed this with a motion for judgment notwithstanding the verdict as against the consortium claimants. Rich now contends that its motions were improperly denied.

In deciding the propriety of the denial of either a motion for directed verdict or one for judgment notwithstanding the verdict, we are to "consider the evidence most favorable to the plaintiff and inquire whether upon any reasonable view of the evidence, there is a combination of facts from which a rational inference may be drawn in the plaintiff's favor." *Sullivan* v. *Brookline,* 416 Mass. 825, 826 (1994) (citations omitted). If Rich owed a duty to Angelos, it must have its origins either in its general contract with the city of Boston or in its subcontract with Chios. The narrow question, then, is whether under either or both contracts Rich retained sufficient right to control Chios's work. See *Corsetti* v. *Stone Co.,* 396 Mass. 1, 11 (1985) (*Corsetti*). "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." *Id.* at 10, quoting from and adopting as Massachusetts law Restatement (Second) of Torts § 414 (1965). In *Corsetti,* as here, an employee of a subcontractor who fell from scaffolding brought suit against the general contractor. *Id.* at 3. The court upheld the jury's determination that, under the provisions of the general contract and the subcontract, the general contractor had re-

tained the authority and control over "all safety precautions and programs in connection with the [w]ork." *Id.* at 11. The subcontract expressly reserved to the general contractor the right to initiate "all safety measures." *Id.* at 6 n.5.

By contrast, in *Foley* v. *Rust Intl.,* 901 F.2d 183, 185 (1st Cir. 1990) (*Foley*), the First Circuit Court of Appeals applied the reasoning of *Corsetti* to a diversity case, and reached an opposite result. Like *Corsetti, Foley* involved a suit for personal injuries against a general contractor by an employee of a subcontractor. The subcontract in *Foley* explicitly shifted control of safety issues to the subcontractor.[3] According to the *Foley* court, the general contractor had much less control over the work than did the general contractor in *Corsetti. Foley, supra* at 185. The court relied on comment c, reprinted below,[4] to § 414 of the Restatement (Second) of Torts, and held that the general contractor merely retained a general right to control the work, while the subcontractor clearly retained the specific right and duty to control the safety aspects of the job under the terms of the subcontract. *Foley, supra* at 185.

The general contract between Rich and the city of Boston is "relevant as evidence of control over the safety aspects of the work," but "cannot vary or heighten any duty" Rich may have already owed to Angelos under its contract with Chios.

---

[3]The *Foley* subcontract provided, "*Subcontractor alone is obligated to provide for the safety of his employees at the job site.* Subcontractor agrees to perform the work in a safe manner, to provide a safe place to work, and to abide by and enforce all federal, state, and local safety laws, rules or regulations governing the performance of the work. *Subcontractor shall furnish all apparel, materials, equipment, tools, labor, instruction, and supervision necessary for the safety of his employees and his compliance with these safety laws.*" (Emphasis supplied.) *Foley,* 901 F.2d at 185.

[4]Comment c provides: "It is not enough that [the general contractor] has merely a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.*" (Emphasis supplied.)

*Corsetti*, 396 Mass. at 11 n.8. Therefore, we begin with the subcontract, itself a standard preprinted two-page form which provides little conclusive guidance. The only relevant provision calls for Rich to "assume to the Subcontractor [Chios] all the obligations and responsibilities that the Awarding Authority [the City of Boston] by the terms of the hereinbefore described documents [the general contract] assumes to the Contractor [Rich]." This provision makes Chios's and Rich's duties coextensive. Hence, the provision does not reserve exclusive control over safety either to Rich, as in *Corsetti*, or to Chios, as in *Foley*. Overall, we think it clear that the subcontract merely allows Rich and Chios jointly to engage in all aspects of the work, including safety, but does nothing to confer on Rich such a degree of control that Chios is "not entirely free to do the work in [its] own way." *St. Germaine* v. *Pendergast*, 411 Mass. 615, 622-623 & n.11 (1992), quoting from Restatement (Second) of Torts § 414 comment c. See also *McNamara* v. *Massachusetts Port Authy.*, 30 Mass. App. Ct. 716, 718-719 (1991). That Chios may do the work "its own way" is further suggested in § (b)2 of the subcontract, which obligates Rich to "prosecute and complete" its portion of the work under the general contract "so that [Chios] will be able to begin, prosecute and complete" its work, upon notice from Rich to begin performance. That section goes on to obligate Chios to complete its work "with due consideration" to the general contract's stated completion date. The subcontract, however, says nothing about Rich's actually overseeing or directing Chios's work.

Our reading of key provisions of the general contract between Rich and the city also leads us to conclude that Rich merely retained a general right to control the work. As in *Foley*, the general contract does not give Rich the degree of control that the general contractor had in *Corsetti*. While the general contract requires Rich to "supervise and direct the work"[5] and to "be responsible for the entire project opera-

---

[5]"4.3 *SUPERVISION AND CONSTRUCTION PROCEDURES* A. The Contractor shall supervise and direct the work. He shall be solely re-

tions and . . . coordinate the work of all trades and give all customary and proper assistance to all Subcontractors,"[6] these provisions, unlike the *Corsetti* contract, do not confer "sole" responsibility over "all" safety aspects of the work. They merely require Rich generally to oversee the project operations and to assist subcontractors. Article 9 of the general contract which requires Rich to "take all proper precautions to protect persons from injury, unnecessary interference or inconvenience, and be responsible for the results of any failure in doing so," holds Rich liable under general principles of negligence for its own acts and omissions, but is not, by itself, evidence of a heightened duty owed to the employee of a subcontractor. The provision, at article 4.7, which requires Rich to have on the job site a superintendent "who shall have *general* charge of the project operation," merely recognizes Rich's general right to oversee the project, while leaving undisturbed Chios's right to control the safety aspects of its own work.

We note further that the behavior of Rich and that of Chios and its employees makes clear the respective degrees of control Rich and Chios actually retained. Rich had no knowledge that Angelos would be on the job on the day of the accident. Had Rich actually retained control over Chios, it would have required Chios's employees, including Angelos, to "check in" with a foreman or superintendent employed by Rich upon commencing work each morning. Compare *Byrd v. Merwin*, 456 Pa. 516, 520 (1974) (in finding control under § 414 of the Restatement [Second] of Torts, the court relied on the actual behavior of the parties by pointing out that the defendant told the subcontractor when and where to begin work). Angelos also testified that, instead of using Chios's scaffolding when he was injured, he used Rich's scaffolding without Rich's approval, even though the general contract re-

---

sponsible for all construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the work of the Contract."

[6] "6.1 The Contractor shall be responsible for the entire project operations and shall properly coordinate the work of all trades and give all customary and proper assistance to all Subcontractors."

quired Chios to provide its own equipment. If Rich had retained actual control over Chios's work, it would have known of, or controlled, such aberrations from the terms of the general contract.

Under these circumstances, we conclude that Rich did not retain a sufficient right of supervision, such that Chios was "not entirely free to do the work in [its] own way." Restatement (Second) of Torts § 414 comment c. See *St. Germaine v. Pendergast*, 411 Mass. at 620; *McNamara v. Massachusetts Port Authy.*, 30 Mass. App. Ct. at 719. We hold that Rich's contractual relationships with the city and with Chios did not confer sufficient right of control over the work so as to create a duty of reasonable care toward Angelos. Rich's motions for directed verdict and for judgment notwithstanding the verdict, therefore, should have been allowed.

2. *Other claims.* Because Rich owed Angelos no duty of reasonable care, the issue of Rich's possible breach is moot. We need not take up this claim. In addition, the plaintiff's various claims of error (most concerning questions of juror behavior and the manner in which portions of the verdict were arrived at) are no longer relevant: the matter should not have been submitted to the jury for deliberation in the first place.

Judgment was entered in the Superior Court against Angelos Dilaveris on the basis that he was more than fifty percent responsible for his own injuries. We affirm that judgment, but for the reasons discussed in this opinion. Judgment for the consortium plaintiffs, Eva and Ianoula Dilaveris, is reversed with instructions that judgment shall enter for the defendant.

*So ordered.*