ANGELOS DILAVERIS & others[1] *vs.* W.T. RICH COMPANY, INC.

Middlesex. September 9, 1996. - December 12, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Practice, Civil,* Directed verdict, Judgment notwithstanding verdict, Question by jury, Special questions to jury. *Negligence,* Construction work, Scaffolding, Comparative. *Jury and Jurors.*

In a civil action, the defendant's motion for a directed verdict sufficiently raised the issue of the extent of the defendant's negligence to warrant appellate consideration of the denial of the defendant's motion for judgment notwithstanding the verdict. [10-11]

In a negligence action brought against a general contractor by an injured employee of a subcontractor, the judge correctly denied the defendant's motions for directed verdict and for judgment notwithstanding the verdict: where, under the terms of the contract, the contractor retained some control over the safety procedures used by the subcontractor, the judge correctly left the issue of the contractor's liability to the jury. [11-13]

At the trial of a negligence action, the judge should have exercised his discretion to inform the jurors, in response to their direct questions, of the effect of their apportionment of negligence between the parties; the matter was remanded for a new trial. [13-15]

CIVIL ACTION commenced in the Superior Court Department on September 24, 1990.

The case was tried before *George A. O'Toole, Jr.,* J., and posttrial motions were heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Leonard F. Zandrow, Jr. (John W. Brister* with him) for the plaintiffs.

*Alice Olsen Mann* for the defendant.

*Kathleen O'Donnell, John J. St. Andre, Jr., David White-Lief, & Kimberley E. Winter* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

ABRAMS, J. After a jury trial in the Superior Court and the

[1]Eva Dilaveris and Ianoula Dilaveris.

trial judge's denial of several posttrial motions, the parties cross appealed. The Appeals Court determined that the defendant, W.T. Rich Company (Rich), the general contractor, did not have a sufficient right of control over the work so as to create a duty of care toward Angelos Dilaveris (plaintiff). The Appeals Court concluded that the judge erred in denying the defendant's motion for judgment notwithstanding the verdict. *Dilaveris* v. *W.T. Rich Co.*, 39 Mass. App. Ct. 115 (1995). We granted the plaintiffs' application for further appellate review. We reverse the judgment on an issue not reached by the Appeals Court and remand the case for a new trial.

*Facts.* The plaintiff, a painter for Chios Painting and Contracting, Inc. (Chios), was injured when he fell off a six-foot scaffolding while scraping paint from the ceiling of a classroom on the second floor of the Farragut School in the Roxbury section of Boston. Chios was an independent contractor used by Rich pursuant to a contract with the Boston public schools to renovate three Boston elementary schools, including the Farragut School.

Harold Squibb was an employee of Rich who had over-all control of the project including safety concerns, the responsibility for which he shared with Chios. Prior to 8 A.M. on the date of the accident, he did a routine check of the room where the plaintiff was injured. He did not see any Chios painters on the job.

The plaintiff had begun his day at approximately 8 A.M. and had used a Chios scaffolding (without guardrails) to scrape the ceilings of four rooms. On entering the fifth room, the plaintiff used a Rich scaffolding already in place. Rich's scaffolding also was not equipped with guardrails, as required by safety standards.

The wheels on the scaffolding had locks to prevent movement. Although the plaintiff locked the wheels on the scaffolding, the scaffolding moved while he was on the platform, causing him to fall and injure himself.[2] Other facts are set forth in the opinion.

I. *The motions for directed verdict and for judgment n.o.v.*
The plaintiffs assert that we should not consider the

---

[2]Injuries included two collapsed lungs, numerous fractures, urinary dysfunction, and sexual dysfunction.

defendant's motion for judgment n.o.v. because Rich's motion for directed verdict did not specifically raise the issue now being argued. See Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974). We do not agree.

Rich's motion stated that the plaintiff failed to present "*prima facie* evidence of liability against it." We think this statement was sufficient to raise the issue of the extent of Rich's negligence. See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 9 n.3 (1983). The rule requiring a directed verdict motion as a prerequisite for a judgment n.o.v. motion "allows the judge knowingly to rule on the question before him, and it allows the opposing party an opportunity to rectify any deficiencies in its case — or, more precisely, an opportunity to seek leave from the court to do so." *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 34-35 (1991), *S.C.*, 412 Mass. 612 (1992). See *Rhode Island Hosp. Trust Nat'l Bank* v. *Varadian*, 419 Mass. 841, 847 (1995). Because the trial focused on the extent of the liability of each party, the issue before the judge was evident. In these circumstances, the motion was sufficiently specific.

The plaintiffs assert that, under *Corsetti* v. *Stone Co.*, 396 Mass. 1, 11 (1985), the judge correctly left the issue of Rich's liability to the jury. We agree. In *Corsetti*, the plaintiff (a subcontractor's employee) fell forty feet from a scaffolding. The plaintiff alleged that The Stone Company (general contractor) had negligently failed to require workers on the construction project to use appropriate safety equipment, specifically a safety belt. *Id.* at 3-7. The contract between the general contractor and the subcontractor stated that the general contractor was "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the [w]ork." *Id.* at 6 n.4.

In *Corsetti*, we examined the critical factor whether the general contractor had any meaningful control, however minimal, over the subcontractor and determined that the general contractor had, in fact, maintained some modest level of control. *Id.* at 10-11.[3] We concluded that based on the contract, the general contractor had retained some control over the subcontractor.

---

[3]The standard adopted in *Corsetti* v. *Stone Co.*, 396 Mass. 1, 10 (1985), is based on Restatement (Second) of Torts § 414 (1965), which reads: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to

Here, the general contract (Contract) language required Rich to "supervise and direct the work. [Rich] shall be solely responsible for all construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the work of the Contract." Further, Rich was to "take all proper precautions to protect persons from injury, unnecessary interference or inconvenience, and be responsible for the results of any failure in doing so." Rich also agreed to "be represented at the job site at all times by a competent administrative project superintendent . . . who shall have general charge of the project operation."

The Associated General Contractors of America Guide for a Basic Company Safety Program states that project superintendents should "[r]equire conformance to safety standards from subcontractors." Rich's supervisor said that part of his responsibility was to see that subcontractors followed safety procedures.[4] Rich had sufficient control and responsibility to bring this case within *Corsetti.*

Rich's reliance on *Foley* v. *Rust Int'l,* 901 F.2d 183 (1st Cir. 1990), is misplaced. In *Foley,* the subcontractor by contract had absolved the contractor of any safety obligations. The subcontractor explicitly took responsibility for all aspects of safety on the jobsite. *Id.* at 184-185. The fact that Rich's supervisor had some responsibility for safety distinguishes *Foley* from this case. Rich's supervisor had an opportunity to stop or prevent the use of unsafe scaffolding and his failure to do so makes the issue of Rich's control and

---

others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

[4]The supervisor testified, in part:

Q.: "That's part of your responsibility to make sure the subcontractors are following safety practices as well, is that right?"

A.: "Yes."

". . ."

Q.: "You don't have any qualms about telling a subcontractor to straighten out his practices if there's something that you see that's wrong?"

A.: "No."

". . ."

Q.: "You understand that that's part of your job to make sure that the subcontractors are acting in a safe manner?"

A.: "Yes."

(Objections omitted.)

negligence questions for the jury. There was no error in denying the motion for directed verdict or for judgment notwithstanding the verdict.

II. *Jury questions.* The plaintiffs argue that the jurors should have been informed of the effect of their apportionment of negligence. We agree.

During deliberations, the jurors asked questions of the judge specifically aimed at determining what the effect of their decision would be.[5] The plaintiffs' counsel objected and argued that, based on the questions being asked, the judge should exercise his discretion and directly answer the jurors' questions. We agree.

"As a general proposition, whether to tell jurors about the consequences of assignment of percentages of comparative negligence is within the discretion of the trial judge." *Mastaby* v. *Central Hosp., Inc.,* 34 Mass. App. Ct. 942, 943 (1993). *Thurston* v. *Ballou,* 23 Mass. App. Ct. 737, 742 (1987). *Kettinger* v. *Black & Decker Mfg. Co.,* 13 Mass. App. Ct. 993 (1982). The fact that a matter is within the judge's discretion, however, does not mean it is not subject to review. Here, it is clear from the questions asked by the jurors that they were speculating on the effect each question had on another question. "We would point to the danger of the jury's speculating in the dark about the possible consequences and would leave it to the judge (as we held in *Kettinger*) to sense — having in view the facts of the particular case, any appeals therein to prejudice over reason, and the style of any inquiries from the jury — whether elucidation with necessary warnings would be likely to help or hurt." *Thurston, supra* at 742-743.

---

[5]The jurors first asked, "Who figures the total dollar figure, us or you?" The judge responded in writing, "To the jury: In answering Question 5, state for each plaintiff the total amount of damages that would fully compensate that plaintiff for the injuries actually suffered. There is no need to total subparts A, B, and C of Question 5."

They later asked, "How does the answer to Question 6 affect Question 5?" to which the judge responded, "[You are] to answer each question independently . . . without considering how they relate to one another."

Question 5 of the special verdict form read, "Please set forth the amount of damages that would compensate each plaintiff fully for his/her injuries" and left a space for each plaintiff.

Question 6 read, "If you have answered 'Yes' to Question 2 *and* Question 4, please list the percentage of each of the parties' negligence. (The percentage must total 100%)." A space was left for both W.T. Rich Company and for the plaintiff.

Courts in other jurisdictions have reached the same result and leave the issue of answering jurors' questions to the judge's discretion. See, e.g., *Seppi* v. *Betty*, 99 Idaho 186 (1978); *Thomas* v. *Township Trustees of Salem Township, Sedgwick County*, 224 Kan. 539 (1978); *Roman* v. *Mitchell*, 82 N.J. 336 (1980); *Smith* v. *Gizzi*, 564 P.2d 1009 (Okla. 1977).[6]

Other States place a duty on the judge so to instruct if requested by one of the parties. See *Kaeo* v. *Davis*, 68 Haw. 447 (1986); *McIntyre* v. *Balentine*, 833 S.W.2d 52 (Tenn. 1992); *Dixon* v. *Stewart*, 658 P.2d 591, 593-596 (Utah 1982); *Adkins* v. *Whitten*, 171 W. Va. 106 (1982).[7]

The case closest to this case arose in Montana. In *Martel* v. *Montana Power Co.*, 231 Mont. 96 (1988),[8] the Supreme Court of Montana ruled that the trial judge should have informed the jurors of the consequences of their answers to the special questions. Relying on *Seppi, supra* at 189, the Montana court considered that, in light of the juror questions, it was clear that the jurors were speculating about the effect of their answers and concluded that "juries . . . should be trusted with the information about the consequences of their verdict." *Martel, supra* at 105.

Here it is clear from their questions that the jurors were speculating about the effect of their answers to the special questions. In those circumstances, the judge should have told the jurors of the consequences of their answers as requested by plaintiffs' counsel. It was error not to do so. We hold that,

[6]A lower court in Pennsylvania has reached the same result. *Peair* v. *Home Ass'n of Enola Legion No. 751*, 287 Pa. Super. 400, 413-414 (1981).

[7]At least nine States by statute permit such instructions; although some require a request by a party and some do not. See V.E. Schwartz, Comparative Negligence § 17-5 (a), at 394 (3d ed. 1994). Maine permits jurors to reduce damages based on the relative degree of negligence. Me. Rev. Stat. Ann. tit. 14, § 156 (1980). *Id.* at 376.

Wisconsin does not permit such instructions at all. See *Delvaux* v. *Vanden Langenberg*, 130 Wis. 2d 464 (1986); *McGowan* v. *Story*, 70 Wis. 2d 189 (1975). The Colorado Legislature recently repealed a statute that mandated such instructions. Colo. Rev. Stat. § 13-21-111 (4), repealed by 1986 Colo. Sess. Laws S.B. 67, § 5.

[8]In *Martel* v. *Montana Power Co.*, 231 Mont. 96, 105 (1988), the jury sent a note to the judge during deliberations that asked, "Do the percentages in question #4 apply to monetary compensation in question #5?" The judge answered, "Dear Folks: You must answer each question separately by 8 or more of your number."

where, as here, the jurors ask questions as to the effect of their answers to special questions and a party requests that the judge inform the jurors as to the effects of their answers, the judge must do so.[9]

The judgment is reversed and the case is remanded to the Superior Court for a new trial.[10]

*So ordered.*

---

[9]The judge has the authority, if the verdict is disproportionate to the injuries, to order a remittur. See Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974). See also *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 803 (1987); *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 661 (1978).

[10]On the result we reach, we need not discuss the issues of juror misconduct and faulty instructions on negligence because they are unlikely to arise at a new trial.