van Gestel, J.
This matter is before the Court on motions for summary judgment filed by the defendant, Nicholas Magiio (“Magiio”), against all plaintiffs in these two consolidated actions. For the reasons stated, the motions are ALLOWED.
*456 BACKGROUND
The following facts are not in dispute. Maglio owned a three-family house on Rantoul Street in Beverly where he lived in one of the apartments and leased the other two apartments to members of the public. Maglio had need to have a roof leak repaired. He learned that one of his tenants, Gary Glidden (“Gary”), brother of the plaintiff, Brian Glidden (“Brian”), in case No. 96-0945, did roofing work and solicited from Gary a bid for the job. Gary’s bid, after some negotiation, was accepted by Maglio.
Gary was not a contractor, but rather was interested in the work to earn some extra money on the weekends. Gary engaged his brother Brian, the plaintiff John Strong (“Strong”) in case No. 97-0589, and another man to assist in the work. Maglio, apparently, had involvement in setting the hourly rates to be paid these workers.
Maglio selected the kind and color of the roofing shingles to be used on the job.
Prior to the start of work, Gary told Maglio that he, Maglio, had to secure the building permit because Gary was a noncontractor and only a homeowner or a contractor could pull a permit. Although Maglio told Gary that he had obtained the permit, in fact he had neglected to do so.
Staging or scaffolding was needed for some of the work. Maglio expressed concern about ladders being utilized in the driveway beside the building because of their interference with his and the neighbors’ access. In response Gary determined to use pump-jack scaffolding. Both Gary and Strong had had prior experience with pump-jack scaffolding, although Strong would have preferred ladder jacks because there was no wood involved in their construction.
Gary supplied all of the labor, materials, and equipment for the roofing job. This included the materials to erect the pump-jack scaffolding. Maglio had no involvement in the scaffolding’s erection or the selection of the materials that made it up.
While the work was ongoing, Maglio would occasionally inspect its progress. He did not, however, supervise or direct the manner in which the work was to be carried out. The latter was left to Gary and his co-workers.
On the second day of work, a portion of the scaffolding collapsed, causing Brian and Strong to fall to the ground and sustain the injuries sued for. Nothing in the materials supplied to the Court explains the reason why the scaffolding collapsed. It is surmised that there may have been some deficiency in some of the wood used in its erection.
DISCUSSION
The plaintiffs make claims in negligence charging Maglio with breach of a duty of care as the owner of a construction site, breach of his duty as a general contractor, and failure to warn of a dangerous condition. They also charge violations of G.L.c. 143, Secs. 50 and 51.
On the facts presented, Maglio was not a general contractor. Rather, he hired Gary, as an independent contractor, to perform the roofing work. The injuries sustained resulted not from any defect or deficiency in Maglio’s property, but instead came from some unexplained fault with the pump-jack scaffolding.
The law with regard to the liability of an employer of an independent contractor for harm to another has recently been restated in Lyon v. Morphew, 424 Mass. 828, 834-35 (1997). There the court said:
In general, an employer of an independent contractor is not liable for harm caused to another by the independent contractor’s negligence, unless the employer retained some control over the manner in which the work was done. See St. Germaine v. Pendergast, 411 Mass. 615, 623 (1992); Corsetti v. Stone Co., 396 Mass. 1, 10 (1985). See also Restatement (Second) ofTorts Sec. 414 (1965) . . . Restatement (Second) of Torts Sec. 414 comment c illustrates the control necessary to impose liability:
In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to the methods of his work, or as to operative detail. There must be such retention of a right that the contractor is not entirely free to do the work his own way.
Maglio, here, has not been shown to have any of the requisite control over the manner in which Gary and his workers performed the work. Further, it was the collapse of the staging, not the performance of the work or the conditions of the site, that caused the injuries. There, thus, is no basis on which to place liability on general tort principles on Maglio.
Additionally, there is no basis for charging Maglio with a duty to warn Brian or Strong about any deficiencies in the scaffolding. There is nothing on which to base a determination that Maglio knew or should have known that the scaffolding presented a hazard to Gary’s employees. See, e.g., Santos v. Bettencourt, 40 Mass.App.Ct. 90 (1996).
The plaintiffs also have attempted to impose liability on Maglio because of the requirements of two statutory provisions: G.L.c. 143, Secs. 50 and 51. Neither section provides relief on the facts presented here.
*457 G.L.c. 143, Sec. 50, provides criminal penalties against any person who hinders a building inspector from doing his job. The plaintiffs argue that Maglio, by failing to have a permit for the work at the time of the scaffold’s collapse, violated that law. The argument rims that if a permit was pulled the inspector would have visited the site and, somehow, would have seen that the scaffolding was defective and thereby would have prevented the accident. That is too much of a stretch for this Court to impose liability on Maglio.
More significantly, Sec. 50 does not provide the basis for a civil cause of action. The remedy for a violation is a fine of not less than fifty dollars.
G.L.c. 143, Sec. 51, as applicable to the situation presented,[1] applies to owners of “a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building.” The question to be determined in this case is whether those words can be read to include an owner-occupied three-family house.
The first St Germaine case, 411 Mass. at 619, ruled that the specific types of structures mentioned in Sec. 51, and the definition of the general term “building” in c. 143, Sec. 1, do not include a single family home. On the other hand, Judge Doerfer, in Whelton v. Seigel, Norfolk Superior Court No. 95-0005, concluded that an eight unit condominium, in which three units were offered for rent to the general public, “is most akin to an apartment building in which the owner derives income from the building, making it essentially a commercial venture” similar to those listed in c. 143, Sec. 51.
To this Court, an owner-occupied three-family house, is more akin to a single family residence than an apartment building. While there may be some minimal income derived from such property, it hardly seems to be the kind of commercial or public use structure contemplated by Sec. 51. Thus, in the absence of more direct appellate guidance, particularly given the interpretational histoxy of this law, this Court rules that G.L.c. 143, Sec. 51, does not apply to Maglio’s three-family house on Rantoul Street in Beverly.
ORDER
For the reasons noted above, the Court directs that summary judgment be ALLOWED in favor of the defendant, Nicholas Maglio, on all counts of the complaints in each of the captioned cases.

The Court is aware of this section’s tortured history. See St. Germaine v. Pendergast, 411 Mass. 615 (1992); St Germaine v. Pendergast, 416 Mass. 698 (1993); and the various amendments to G.L.c. 143, Sec. 51.