Brady, J.
Plaintiff William Frazier (Frazier) seeks to recover damages from the various defendants for injuries that he suffered when a nail gun operated by defendant Roger Gregoire (Gregoire) discharged into his hand. Defendant Orlando Annulli & Sons, Inc. (Annulli) now moves for summary judgment on the claims against it. For the following reasons, Annulli’s motion is DENIED.
BACKGROUND
In July 1993, Frazier began working as an electrical subcontractor at a construction site in Braintree, Massachusetts, owned by Braintree Post Office Limited Partnership, of which Annulli was a general partner. Annulli also served as the general contractor for the construction of a building on the site to be occupied upon completion by a branch of the U.S. Postal Service. On August 16, 1993, Gregoire began working at the site, where he was employed to install drywall by either of the subcontractor defendants, Expert Drywall Co., Inc. or Central Plastering Corp.
During the time that Frazier and Gregoire worked together at the site, the two occasionally took coffee breaks together. At the same time, Frazier and Gregoire had disagreements regarding Gregoire moving Frazier’s equipment, Gregoire closing in with drywall Frazier’s electrical boxes, and the manner in which Gregoire used his nail gun while others were present in the room. Several times, Gregoire made a statement to Frazier that Frazier considered to be a threat: “Don’t mess around with me, I’m crazy”; but Gregoire had never physically touched Frazier. Frazier spoke to Jerry Chaifree (Chaifree), Annulli’s foreman/project supervisor at the site, about his disagreements with Gregoire.
Chaifree was at the site every day checking on the progress and safety of the work being performed. Chaifree once instructed Gregoire to warn others when he was going to be using his nail gun. Keith Kaeberry (Kaeberry) was Annulli’s project supervisor, and was at the site at least once a week, and he, too, walked around the site to check for safety violations. Frazier may also have spoken to Kaeberry about his disagreements with Gregoire.
On October 1, 1993, Frazier was talking to a person under Gregoire’s supervision. Gregoire told Frazier to stop talking to the employee, but Frazier refused. The subsequent events are disputed by the parties, but in any event, Gregoire accidentally or intentionally shot Frazier in the hand with his nail gun. Frazier received hospital treatment for his injuries.
In his complaint, Frazier seeks to hold Annulli liable for failure to maintain a safe workplace (Count IV), and to hold Annulli strictly liable for a violation of454 Code Mass. Regs. §10.68 and 780 Code Mass. Regs. §3000.2.1, which, by operation of 780 Code Mass. Regs. 100.5, incorporates the Rules and Regulations in Construction Operations 454 Code Mass. Regs. 10.00 (Count V).
DISCUSSION
This court will grant summary judgment where there are no genuine issues of material fact and where *395 the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). A moving party who does not bear the burden of proof at trial must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). When appropriate, summary judgment “may be rendered as to certain issues only, leaving other issues to be tried to the jury because they present a genuine issue of fact.” Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
I. Liability for negligence.
In Count IV of the complaint, Frazier alleges that Annulli is liable for failing to maintain a reasonably safe worksite. Further, although not alleged in his complaint, Frazier also argues that Annulli, as the owner and occupant of the property, owed him a duty of reasonable care to prevent the injury by Gregoire. Annulli relies upon Dilaveris v. W. T. Rich Co., 39 Mass.App.Ct. 115, rev. granted 421 Mass. 1105 (1995), to support its argument that it had no duty to prevent injury to Frazier, a subcontractor’s employee, because it did not retain sufficient right to control the work. Further, Annulli maintains that under Foley v. Boston Housing Authority, 407 Mass. 640 (1990), it is entitled to summary judgment because, as a matter of law, it owed no duty to Frazier to prevent the criminal acts of a third person since it had not voluntarily assumed any such duty and since it had no special relationship with Frazier.
First, the State Building Code imposed on Annulli, as the general contractor, the duty to maintain a reasonably safe workplace. See Corsetti v. Stone Co., 396 Mass. 1, 9 (1985); St. Germaine v. Pendergast, 411 Mass. 615, 620-21 (1992); see also, e.g., 780 Code Mass. Regs. §§109.1.1, 3006.1, and 3000.2.1. A violation of the State Building Code, as alleged and if proven, is some evidence of negligence, see St. Germaine v. Pendergast at 620, and summary judgment is therefore inappropriate as to this theory of liability. Further, an employer of an independent subcontractor owes a duty to exercise reasonable care for the protection of others, and may be liable for its own negligence in connection with the work to be done insofar as it in fact gave directions for the work, furnished equipment for the work, or retained control over any part of the work. Corsetti v. Stone Co., supra, 396 Mass. at 9-10. Evidence of such a duty may be found in the general contract or in the contract with the subcontractor. Dilaveris v. W.T. Rich Co., supra, 39 Mass.App.Ct. at 117. The summary judgment record reveals that in the general contract between Annulli and the United States Postal Service, Annulli assumed the responsibility to take proper safety and health precautions to protect the work, the workers, the public and the property of others; and to enforce safety procedures applicable to the work. For these reasons, summary judgment will be denied to the extent that Frazier pursues the theory that Annulli is liable for its own negligence.
Next, the court notes that whether Gregoire shot the nail gun accidentally, as Gregoire maintains, or intentionally, as Annulli suggests, is a matter of dispute. However, even if Gregoire’s act was indeed criminal, the court agrees with Frazier that under Flood v. Southland Corp., 416 Mass. 62 (1993), as the landowner, Annulli owed a common law duty of reasonable care to all lawful visitors to prevent injury by a third person, whether that person’s acts were accidental, negligent or intentional. Id. at 72. The reasonable foreseeability of harm, and whether Frazier broke the causal connection if he provoked Gregoire, are questions for the finder of fact. Id. at 73, 72 n. 11.
II. Liability under G.L.c. 143, §51.
Annulli also maintains that it is entitled to judgment on CountV on the complaint because G.L.c. 143, §51 is inapplicable to this case as a matter of law.
G.L.c. 143, §51 provides that “(t]he owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theater, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any said provisions.”
Annulli argues that the statute is properly interpreted to mean that the party in control of a building is liable for damages caused by a violation of the provisions of c. 143 and the provisions of State Building Code that relate to that chapter. Annulli continues that because Frazier has not claimed a violation of any provision of the State Building Code that relates to a provision of c. 143, his claim must fail. Frazier, on the other hand, maintains that there is another, equally plausible way to read §51, that is: the party in control of a building is liable for damages caused by a violation of the provisions of c. 143 and the State Building Code that relate to the particular type of building involved.
In construing a statute, the court’s duty is to ascertain and implement the Legislature’s intent, and if the language is unclear, the court may look to outside sources for assistance in determining the correct construction. Rosenbloom v. Kokofsky, 373 Mass. 778, 780-81 (1977). As discussed below, the court concludes that the history of the statute weighs against Annulli’s interpretation and points to Frazier’s reading as the correct construction of the statute.
In 1913, the Legislature enacted “An Act to Revise and Codify the Building Inspection Laws of the Commonwealth,” see St. 1913, c. 655 (the 1913 Act). The 1913 Act consisted of sixty-two sections that codified *396 a lire and safety code applicable to public buildings. Section 50 of the 1913 Act, which became §51 of G.L.c. 143, provided that: “[t]he owner, lessee or occupant of a theater, factory, workshop or manufacturing establishment, or whoever owns any building or room mentioned in and subject to the provisions of Sections twenty to twenty-five, inclusive, and twenty-seven of this act, or controls the use thereof, shall cause the provisions thereof to be observed, and such person or corporation shall be liable to any person injured for all damages caused by a violation of the provisions of this act.”[2]
In 1945, G.L.c. 143, §51 was modified to read: “[t]he owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theater, special hall, public hall, factory, workshop, manufacturing establishment or building mentioned in and subject to Sections twenty-one, twenty-four to twenty-eight, inclusive, and thirty shall cause the provisions of said sections relative thereto to be complied with, and such person shall be liable to any person injured for all damages caused by a violation of any said provisions.” St. 1943, c. 510 (emphasis supplied). In this version of §51, the person in control was liable for violations of the provisions of the listed sections relative to the types of buildings listed.
Then in 1972, in “An Act Establishing the State Building Code Commission for the Adoption and Promulgation of a State Building Code,” Sections twenty-one, twenty-four to twenty-eight, inclusive, and thirty of c. 143 were repealed, and §51 was enacted in its present form[3] to conform to the changes in the chapter and to the provision for a State Building Code. See 1972 Mass. Acts c. 802, §35. The section now reads: “(t]he owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theater, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any said provisions.” G.L.c. 143, §51 (emphasis supplied). When the Building Code was first promulgated, it addressed (among other things) the requirements that had been covered in the repealed Sections twenty-one, twenty-four to twenty-eight, inclusive, and thirty.
After reviewing the history of §51, the court concludes that it is highly improbable that the Legislature intended to so radically alter the protections formerly provided by the statute by repealing the very fire safety sections in c. 143 that had been referred to in §51, and instead make the other, remaining provisions of the chapter (and related building code provisions) subject to §51. Although the Legislature may not have foreseen that the State Building Code would grow into the lengthy regulation that it is today, the court nevertheless concludes that, in enacting the 1972 version, the Legislature intended to substitute the words “the provisions of this chapter and the state building code” for the words “sections twenty-one, twenty-four to twenty-eight, inclusive, and thirty” that appear in the 1943 version. The modifier “relative thereto” therefore refers to the type of building involved; the party in control of a building is liable for damages caused by a violation of the provisions of c. 143 and the State Building Code that relate to the particular type of building involved. Annulli’s motion for summary judgment will therefore be denied.
The court also notes that summary judgment may not be entered against Annulli as the moving party, as may be allowed in appropriate circumstances. See Mass.R.Civ.P. 56(c). Frazier claims that Annulli is liable under c. 143, §51 for aviolation of the provisions of 454 Code Mass. Regs. 10.65.[4] The parties have not addressed, and questions remain, concerning whether the construction site was a building for the purpose of applying §51; whether Annulli was the party in control of the building when the incident occurred; and whether Frazier’s injuries were caused by a violation of the State Building Code.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Orlando Annulli & Sons, Inc.’s motion for summary judgment is DENIED.

Sections 20 to 2 5, and 27, of the 1913 Act apply generally to public buildings, and pertain to: the provision of fire escapes (§20) and fire extinguishers (§21); the prohibition of wooden flues (§22); the construction of theaters (§23) and fire-resisting partitions in theaters (§24); inspection and occupancy certificates (§25), and changes in building usage (§27). As will become relevant in the following paragraph, these sections were codified at G.L.c. 143, §§21, 24-28, inclusive, and 30.

In 1992, Section 51 was amended in response to the Supreme Judicial Court’s ruling in St. Germaine v. Pendergast 411 Mass. 615 (1992) (St. Germaine I). The amendment inserted two sentences extending liability for failure to provide a safe workplace to any person who obtains a building permit. See St. 1992 c. 66, §1. These same sentences were deleted the following year after the Court ruled that retroactive application of the provision was unconstitutional. See St. 1993 c. 495, §35; St. Germaine v. Pendergast 416 Mass. 698 (1993) (St. Germaine II).

The Rules and Regulations in Construction Operations (441 Code Mass. Regs. 10.00, later recodified at 454 Code Mass. Regs.) listed in Appendix G of the state building code are specifically incorporated into the code. 780 Code Mass. Regs. 100.5; see also id. at 3000.2.1.
Although Frazier does not identify the precise subsection of 454 Code Mass. Regs. 10.65 that he relies upon, the court will infer from the allegations in his complaint that Frazier relies upon §§10.65(5)(bb) and 10.65(5)(cc), which provide: “Bystanders. The person in charge of the work on which a tool is used shall take measures to insure that it is used only in such manner and in such places as will not endanger persons who may be in the vicinity:” and “Pointing or Holding. No operator shall at any time point a tool, whether loaded or unloaded, at any person.”