**LANIER PROFESSIONAL SERVICES, INC., Plaintiff, Appellant,**

v.

**Eileen M. RICCI and Bomont Graphics Technology, Inc., Defendants, Appellees.**

No. 99–1534.

United States Court of Appeals, First Circuit.

Heard June 8, 1999.

Decided Sept. 15, 1999.

Daniel M. Shea, with whom Smith, Currie & Hancock, LLP, Harry T. Daniels, and Hale & Dorr, LLP, were on brief, for appellant.

Barry Ravech for Eileen M. Ricci.

Cheryl Pinarchick, with whom James W. Stoll, and Brown, Rudnick, Freed & Gesmer were on brief, for Bomont Graphics Technology, Inc.

Before SELYA, BOUDIN, and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

Plaintiff-appellant Lanier Professional Services, Inc. ("Lanier"), brought this action against its former employee Eileen M. Ricci and her new employer, Bomont Graphics Technology, Inc. ("Bomont"). Lanier requested, inter alia, a preliminary injunction barring Ricci from working for Bomont in violation of a noncompetition provision in Ricci's employment agreement with Lanier. That provision requires that Ricci not sell "Facilities Mgmt [Management] Services" for one year after her employment with Lanier, which ended in November 1998. Lanier also sought to enjoin both defendants from using confidential information and trade secrets that Ricci had allegedly misappropriated from Lanier. The district court denied the motion for a preliminary injunction, concluding that Lanier had not shown a likelihood of success on the merits. We affirm.

## I.

Ricci was employed by Copytech Printing, Inc. ("Copytech"), from 1991 to 1996. She sold printing and copying services to various clients including members of MASCO, a consortium of colleges and hospitals located in Boston's Longwood Medical Area. She also supervised a printing and copying center operated by Copytech at a facility in Boston leased from MASCO. In February 1996, Lanier purchased Copytech. As a condition of continued employment with Lanier, Ricci was required to sign a standard-form Lanier Employment

Agreement that included the following provision: "During the term of employment with the Company and for a period of one (1) year after termination of employment hereunder ... Employee will not, directly or indirectly, on Employee's own behalf or for others, demonstrate, service, or sell products or perform services in the Territory[1] that are competitive with the Products...." The "Products" were defined by checking the appropriate items from a list; on Ricci's agreement, only "Facilities Mgmt Services" was checked.

Ricci performed the same type of work for Lanier that she had for Copytech, selling off-site printing and copying services and overseeing the copy center. Ricci resigned from Lanier on November 30, 1998, and began working for Bomont in December 1998 as its sole outside salesperson. A small printing shop specializing in large-format, full-color printing, Bomont to some degree competes with Lanier (and many others) in the Boston printing market. In her new job Ricci has won at least two former Lanier accounts for Bomont.

Lanier filed suit against Ricci and Bomont in the United States District Court for the District of Massachusetts in February 1999, seeking damages and a preliminary and permanent injunction. After reviewing the affidavits submitted by the parties and hearing argument, the court denied the motion for a preliminary injunction. This appeal followed.

## II.

We review the denial of a request for a preliminary injunction for abuse of discretion, *see Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 4 (1st Cir.1999), but "rulings on abstract legal issues remain reviewable *de novo*, and

findings of fact are assessed for clear error," *Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 61 n. 1 (1st Cir.1998). "The appealing party bears the considerable burden of demonstrating that the District Court flouted the four-part test for preliminary injunctive relief." *Used Tire Int'l, Inc. v. Diaz–Saldana*, 155 F.3d 1, 4 (1st Cir.1998) (internal quotation marks omitted). That familiar four-part test requires the plaintiff to show: "(1) it is substantially likely to succeed on the merits of its claim; (2) absent the injunction there is a significant risk of irreparable harm; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir.1998) (internal quotation marks omitted). We apply the federal preliminary injunction standard in a diversity case, at least where the parties have not suggested that state law supplies meaningfully different criteria. *See Ocean Spray*, 160 F.3d at 61. We have also noted that "Massachusetts standards for a preliminary injunction do not seem markedly different" than ours. *Id.* (citing *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 405 N.E.2d 106, 111–12 (1980)).

## III.

The primary issue in this appeal involves the interpretation of the term "facilities management services," which the noncompetition agreement bars Ricci from selling until November 30, 1999. The district court found that term ambiguous, construed the agreement against the drafter, Lanier, and concluded that Lanier had not demonstrated a substantial likelihood of success in proving that Ricci had violated the agreement.[2]

---

1. The Territory was identified, on the copies of the employment agreement submitted to the court, as the Massachusetts counties of Middlesex, Norfolk, Suffolk, and Plymouth. Ricci stated in her affidavit, however, that the Territory definition was blank when she signed the agreement.

2. Having reached that conclusion, the district court did not address the enforceability of the agreement or the other three preliminary injunction factors. Because we agree with the court's analysis, we also do not reach those issues.

There appears to be no dispute that facilities management services refers primarily to support services that the client wishes to "out-source" to an outside provider who works *on-site* at a client's place of business. Facilities management services are an important and growing part of Lanier's business in Boston. The dispute in this case relates to *off-site* printing services, not performed at the client's place of business, which Ricci sold for Copytech and Lanier, and now sells for Bomont. Ricci and Bomont contend that such off-site services are not facilities management services as that term is used in the printing and copying industry, and as it was used at Lanier while Ricci worked there. Lanier, on the other hand, asserts that facilities management services include off-site printing.

 Under Massachusetts law, a contract term is ambiguous when its language is "reasonably prone to different interpretations" or "susceptible to differing, but nonetheless plausible, constructions." *Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir. 1998); *see also Bercume v. Bercume*, 428 Mass. 635, 704 N.E.2d 177, 182 (1999). Whether a term is ambiguous is a question of law. *See Alison H.*, 163 F.3d at 6.

 We agree with the district court that the term "facilities management services," undefined in the agreement, is inescapably ambiguous as a matter of law. When contractual language is ambiguous, its meaning is a question of fact. *See Den Norske Bank AS v. First National Bank*, 75 F.3d 49, 52 (1st Cir.1996). The resolution of the ambiguity turns on the parties' intent, as "discerned by the factfinder from the circumstances surrounding the ambiguity and from such reasonable inferences as may be available." *Colasanto v. Life Ins. Co. of N. Am.*, 100 F.3d 203, 211 (1st Cir.1996). Extrinsic evidence is admissible to assist the factfinder in resolving the ambiguity, including evidence of, in

descending order of importance: (1) the parties' negotiations concerning the contract at issue; (2) their course of performance; and (3) trade usage in the relevant industry.[3] *See Den Norske*, 75 F.3d at 52–53; *see also Keating v. Stadium Management Corp.*, 24 Mass.App.Ct. 246, 508 N.E.2d 121, 123 (1987). In support of their competing definitions of facilities management services, the parties offered evidence in each of those three categories, the defendants focusing on the first and third and Lanier on the second.

There were no negotiations. Ricci was presented with a standard-form employment agreement and told she had to sign it to retain her position. Ricci, however, stated in her affidavit that at the time she signed the agreement, she did not believe that her work could be characterized as facilities management services, and that she shared that view at the time with a fellow employee, Todd Nugent. Nugent's affidavit corroborates Ricci's. Ricci also stated that she thought that she might be asked to sell such facilities management services in the future, thus explaining the seeming oddity of Lanier requiring her to sign a noncompetition agreement covering a product that she had never sold.

Ricci and Bomont also offered significant evidence concerning the usage of the term facilities management services in the trade. *See Atlantic Track & Turnout Co. v. Perini Corp.*, 989 F.2d 541, 543 (1st Cir.1993) (trade usage may be used to help discern meaning of ambiguous contract term). That evidence included affidavits from Ricci, five other former Lanier employees, an employee of another copying and facilities management company, and an owner of Bomont. They all agreed that off-site printing, which Ricci sold for Lanier and now sells for Bomont, is not considered facilities management in the printing and copying trade or was not so considered at Lanier when Ricci worked there.

**3.** A fourth category of extrinsic evidence, prior course of dealing, is not relevant here because the employment agreement, signed shortly after Lanier had purchased Copytech, was the first dealing between Ricci and Lanier.

Lanier focused primarily on the undisputed fact that Ricci worked for Lanier for almost three years and that her employment agreement prohibited her from competing when she left the company in providing facilities management services. *See Lembo v. Waters*, 1 Mass.App.Ct. 227, 294 N.E.2d 566, 569 (1973) (court may resort to conduct of parties to determine meaning they put on ambiguous contract term). That fact, according to Lanier, shows Ricci's acquiescence in its definition of the term. There is an intuitive appeal to the notion that Ricci should have understood that when the employment agreement barred her from selling facilities management services for a year after leaving Lanier, the intent was to cover the sort of services that she in fact sold for Lanier. This evidence certainly has some probative value. However, it did not compel a finding by the court that Ricci acquiesced in Lanier's understanding by performing under the agreement.

 Unable to resolve the ambiguity in the contract language, the court properly resorted to the familiar principle that an ambiguous "post-employment restraint imposed by the employer's standardized form contract" will be construed against the drafter. *Sentry Ins. v. Firnstein*, 14 Mass.App.Ct. 706, 442 N.E.2d 46, 46–47 (1982) (citing Restatement (Second) of Contracts § 188 cmt. g (1981)). The court's conclusion that Lanier had not demonstrated a substantial likelihood of success on the merits reflected factual findings that are not clearly erroneous and a correct understanding of the law. The court's denial of a preliminary injunction, therefore, was not an abuse of discretion.

### IV.

Lanier also argues that the district court abused its discretion by refusing to enter an injunction barring Ricci from disclosing, and Bomont from making use of, confidential information misappropriated from Lanier. That argument requires little discussion. Lanier's scant evidence that Ricci had appropriated information consisted primarily of the affidavit of Ricci's successor, who stated that he had "received information which led [him] to believe Ricci may have removed documents from Lanier's files prior to her resignation." As the district court found, that affidavit was so devoid of content as to be "practically worthless."

Even assuming that Lanier had shown that Ricci had misappropriated documents, it offered no evidence that those documents contained confidential information or trade secrets. Although Ricci's employment agreement contained a nondisclosure clause, "[s]uch an agreement cannot make secret that which is not secret. . . ." *Dynamics Research Corp. v. Analytic Sciences Corp.*, 9 Mass.App.Ct. 254, 400 N.E.2d 1274, 1288 (1980). The district court did not abuse its discretion in denying the motion for a preliminary injunction.

*Affirmed.*