USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 99-1534 LANIER PROFESSIONAL SERVICES, INC., Plaintiff, Appellant, v. EILEEN M. RICCI AND BOMONT GRAPHICS TECHNOLOGY, INC., Defendants, Appellees. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] Before Selya, Boudin, and Lipez, Circuit Judges.     Daniel M. Shea, with whom Smith, Currie & Hancock, LLP, HarryT. Daniels, and Hale & Dorr, LLP, were on brief, for appellant. Barry Ravech for Eileen M. Ricci. Cheryl Pinarchick, with whom James W. Stoll, and Brown,Rudnick, Freed & Gesmer were on brief, for Bomont GraphicsTechnology, Inc.September 15, 1999   LIPEZ, Circuit Judge. Plaintiff-appellant LanierProfessional Services, Inc. ("Lanier"), brought this action againstits former employee Eileen M. Ricci and her new employer, BomontGraphics Technology, Inc. ("Bomont"). Lanier requested, interalia, a preliminary injunction barring Ricci from working forBomont in violation of a noncompetition provision in Ricci'semployment agreement with Lanier. That provision requires thatRicci not sell "Facilities Mgmt [Management] Services" for one yearafter her employment with Lanier, which ended in November 1998. Lanier also sought to enjoin both defendants from usingconfidential information and trade secrets that Ricci had allegedlymisappropriated from Lanier. The district court denied the motionfor a preliminary injunction, concluding that Lanier had not showna likelihood of success on the merits. We affirm. I. Ricci was employed by Copytech Printing, Inc.("Copytech"), from 1991 to 1996. She sold printing and copyingservices to various clients including members of MASCO, aconsortium of colleges and hospitals located in Boston's LongwoodMedical Area. She also supervised a printing and copying centeroperated by Copytech at a facility in Boston leased from MASCO. InFebruary 1996, Lanier purchased Copytech. As a condition ofcontinued employment with Lanier, Ricci was required to sign astandard-form Lanier Employment Agreement that included thefollowing provision: "During the term of employment with theCompany and for a period of one (1) year after termination ofemployment hereunder . . . Employee will not, directly orindirectly, on Employee's own behalf or for others, demonstrate,service, or sell products or perform services in the Territory[]that are competitive with the Products . . . ." The "Products"were defined by checking the appropriate items from a list; onRicci's agreement, only "Facilities Mgmt Services" was checked. Ricci performed the same type of work for Lanier that shehad for Copytech, selling off-site printing and copying servicesand overseeing the copy center. Ricci resigned from Lanier onNovember 30, 1998, and began working for Bomont in December 1998 asits sole outside salesperson. A small printing shop specializingin large-format, full-color printing, Bomont to some degreecompetes with Lanier (and many others) in the Boston printingmarket. In her new job Ricci has won at least two former Lanieraccounts for Bomont. Lanier filed suit against Ricci and Bomont in the UnitedStates District Court for the District of Massachusetts in February1999, seeking damages and a preliminary and permanent injunction. After reviewing the affidavits submitted by the parties and hearingargument, the court denied the motion for a preliminary injunction. This appeal followed. II. We review the denial of a request for a preliminaryinjunction for abuse of discretion, see Hiller Cranberry Products,Inc. v. Koplovsky, 165 F.3d 1, 4 (1st Cir. 1999), but "rulings onabstract legal issues remain reviewable de novo, and findings offact are assessed for clear error," Ocean Spray Cranberries, Inc.v. PepsiCo, Inc., 160 F.3d 58, 61 n.1 (1st Cir. 1998). "Theappealing party bears the considerable burden of demonstrating thatthe District Court flouted the four-part test for preliminaryinjunctive relief." Used Tire Int'l, Inc. v. Diaz-Saldana, 155F.3d 1, 4 (1st Cir. 1998) (internal quotation marks omitted). Thatfamiliar four-part test requires the plaintiff to show: "(1) it issubstantially likely to succeed on the merits of its claim; (2)absent the injunction there is a significant risk of irreparableharm; (3) the balance of hardships weighs in its favor; and (4) theinjunction will not harm the public interest." I.P. Lund TradingApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) (internalquotation marks omitted). We apply the federal preliminaryinjunction standard in a diversity case, at least where the partieshave not suggested that state law supplies meaningfully differentcriteria. See Ocean Spray, 160 F.3d at 61. We have also notedthat "Massachusetts standards for a preliminary injunction do notseem markedly different" than ours. Id. (citing Packaging Indus.Group, Inc. v. Cheney, 405 N.E.2d 106, 111-12 (Mass. 1980)). III. The primary issue in this appeal involves theinterpretation of the term "facilities management services," whichthe noncompetition agreement bars Ricci from selling untilNovember 30, 1999. The district court found that term ambiguous,construed the agreement against the drafter, Lanier, and concludedthat Lanier had not demonstrated a substantial likelihood ofsuccess in proving that Ricci had violated the agreement. There appears to be no dispute that facilities managementservices refers primarily to support services that the clientwishes to "out-source" to an outside provider who works on-site ata client's place of business. Facilities management services arean important and growing part of Lanier's business in Boston. Thedispute in this case relates to off-site printing services, notperformed at the client's place of business, which Ricci sold forCopytech and Lanier, and now sells for Bomont. Ricci and Bomontcontend that such off-site services are not facilities managementservices as that term is used in the printing and copying industry,and as it was used at Lanier while Ricci worked there. Lanier, onthe other hand, asserts that facilities management services includeoff-site printing. Under Massachusetts law, a contract term is ambiguouswhen its language is "reasonably prone to differentinterpretations" or "susceptible to differing, but nonethelessplausible, constructions." Alison H. v. Byard, 163 F.3d 2, 6 (1stCir. 1998); see also Bercume v. Bercume, 704 N.E.2d 177, 182 (Mass.1999). Whether a term is ambiguous is a question of law. SeeAlison H., 163 F.3d at 6. We agree with the district court that the term"facilities management services," undefined in the agreement, isinescapably ambiguous as a matter of law. When contractuallanguage is ambiguous, its meaning is a question of fact. See Dennorske Bank AS v. First National Bank, 75 F.3d 49, 52 (1st Cir.1996). The resolution of the ambiguity turns on the parties'intent, as "discerned by the factfinder from the circumstancessurrounding the ambiguity and from such reasonable inferences asmay be available." Colasanto v. Life Ins. Co. of N. Am., 100 F.3d203, 211 (1st Cir. 1996). Extrinsic evidence is admissible toassist the factfinder in resolving the ambiguity, includingevidence of, in descending order of importance: (1) the parties'negotiations concerning the contract at issue; (2) their course ofperformance; and (3) trade usage in the relevant industry. SeeDen norske, 75 F.3d at 52-53; see also Keating v. StadiumManagement Corp., 508 N.E.2d 121, 123 (Mass. App. Ct. 1987). Insupport of their competing definitions of facilities managementservices, the parties offered evidence in each of those threecategories, the defendants focusing on the first and third andLanier on the second. There were no negotiations. Ricci was presented with astandard-form employment agreement and told she had to sign it toretain her position. Ricci, however, stated in her affidavit thatat the time she signed the agreement, she did not believe that herwork could be characterized as facilities management services, andthat she shared that view at the time with a fellow employee, ToddNugent. Nugent's affidavit corroborates Ricci's. Ricci alsostated that she thought that she might be asked to sell suchfacilities management services in the future, thus explaining theseeming oddity of Lanier requiring her to sign a noncompetitionagreement covering a product that she had never sold. Ricci and Bomont also offered significant evidenceconcerning the usage of the term facilities management services inthe trade. See Atlantic Track & Turnout Co. v. Perini Corp., 989F.2d 541, 543 (1st Cir. 1993) (trade usage may be used to helpdiscern meaning of ambiguous contract term). That evidenceincluded affidavits from Ricci, five other former Lanier employees,an employee of another copying and facilities management company,and an owner of Bomont. They all agreed that off-site printing,which Ricci sold for Lanier and now sells for Bomont, is notconsidered facilities management in the printing and copying tradeor was not so considered at Lanier when Ricci worked there.  Lanier focused primarily on the undisputed fact thatRicci worked for Lanier for almost three years and that heremployment agreement prohibited her from competing when she leftthe company in providing facilities management services. See Lembov. Waters, 294 N.E.2d 566, 569 (Mass. App. Ct. 1973) (court mayresort to conduct of parties to determine meaning they put onambiguous contract term). That fact, according to Lanier, showsRicci's acquiescence in its definition of the term. There is anintuitive appeal to the notion that Ricci should have understoodthat when the employment agreement barred her from sellingfacilities management services for a year after leaving Lanier, theintent was to cover the sort of services that she in fact sold forLanier. This evidence certainly has some probative value. However, it did not compel a finding by the court that Ricciacquiesced in Lanier's understanding by performing under theagreement. Unable to resolve the ambiguity in the contract language,the court properly resorted to the familiar principle that anambiguous "post-employment restraint imposed by the employer'sstandardized form contract" will be construed against the drafter. Sentry Ins. v. Firnstein, 442 N.E.2d 46, 46-47 (Mass. App. Ct.1982) (citing Restatement (Second) of Contracts § 188 cmt. g(1981)). The court's conclusion that Lanier had not demonstrateda substantial likelihood of success on the merits reflected factual findings that are not clearly erroneous and a correctunderstanding of the law. The court's denial of a preliminaryinjunction, therefore, was not an abuse of discretion. IV. Lanier also argues that the district court abused itsdiscretion by refusing to enter an injunction barring Ricci fromdisclosing, and Bomont from making use of, confidential informationmisappropriated from Lanier. That argument requires littlediscussion. Lanier's scant evidence that Ricci had appropriatedinformation consisted primarily of the affidavit of Ricci'ssuccessor, who stated that he had "received information which led[him] to believe Ricci may have removed documents from Lanier'sfiles prior to her resignation." As the district court found, thataffidavit was so devoid of content as to be "practicallyworthless." Even assuming that Lanier had shown that Ricci hadmisappropriated documents, it offered no evidence that thosedocuments contained confidential information or trade secrets. Although Ricci's employment agreement contained a nondisclosureclause, "[s]uch an agreement cannot make secret that which is notsecret . . . ." Dynamics Research Corp. v. Analytic SciencesCorp., 400 N.E.2d 1274, 1288 (Mass. App. Ct. 1980). The districtcourt did not abuse its discretion in denying the motion for apreliminary injunction. Affirmed.