RYSZARD KOSTRZEWA, administrator,[1] *vs.* SUFFOLK
CONSTRUCTION COMPANY, INC.

No. 07-P-1450.

Suffolk. September 10, 2008. - December 18, 2008.

Present: McHUGH, MILLS, & WOLOHOJIAN, JJ.

*Negligence,* Construction work, Scaffolding, Building contractor, Contractual
limitation of liability.

In a civil action alleging negligent supervision brought against a general
contractor by an employee of a sub-subcontractor who was injured while
working on the general contractor's construction project, the judge erred in
granting summary judgment in favor of the general contractor, where the
evidence, viewed in the light most favorable to the employee, was suf-
ficient to show that the general contractor had general responsibility for
and control over the project, including responsibility for safety; that the
general contractor performed supervision, safety, and security duties on the
day the employee was injured; and that the general contractor's duty was
not delegated to a subcontractor or the sub-subcontractor [378-382]; further,
the evidence at the summary judgment stage was sufficient to permit an
inference that the general contractor knew or should have known that the
equipment that caused the employee's injury was not being used safely
[382].

CIVIL ACTION commenced in the Superior Court Department on
February 2, 2005.

The case was heard by *Patrick F. Brady,* J., on a motion for
summary judgment.

*John B. Flemming* for the plaintiff.

*Emily L. Dwyer* for the defendant.

WOLOHOJIAN, J. Jaroslaw Kostrzewa was injured when the
scaffolding on which he was working fell.[2] Kostrzewa, who was
employed by Superior Abatement, Inc. (Superior), brought this

---

[1]Of the estate of Jaroslaw Kostrzewa.

[2]Jaroslaw Kostrzewa died in 2005 for reasons unrelated to this case, and
Ryszard Kostrzewa, as administrator of his estate, was substituted as plaintiff.
References hereinafter to Kostrzewa are to Jaroslaw unless otherwise noted.

suit against Suffolk Construction Company, Inc. (Suffolk), alleging negligent supervision.[3] Suffolk was the general contractor on the project; Superior was a sub-subcontractor. Summary judgment was granted in favor of Suffolk on the ground that, as a matter of law, Suffolk had not exercised sufficient control over Superior's work to owe a duty to Kostrzewa. For the reasons set out below, we reverse.

*Background.* Suffolk was the general contractor for a project (project) to renovate the Saltonstall Building (building) at 100 Cambridge Street in Boston. Suffolk, in turn, subcontracted with North American Site Developers, Inc. (NASDI), to perform demolition and abatement work on the project, including asbestos abatement. NASDI further subcontracted with Superior to perform the asbestos abatement work on the project. Kostrzewa was employed by Superior as an asbestos worker.

Asbestos abatement took place only in contained areas to which access was restricted to licensed asbestos removal or air quality monitoring workers. On May 31, 2002, Kostrzewa and a coworker, Zdzislaw Zylinski (who was also employed by Superior), were removing asbestos within a containment area. The men were working on scaffolding that was approximately twenty feet high and mounted on wheels.[4] Suffolk did not own and had not erected the scaffolding. When the men wanted to move the scaffolding to work on a new spot, they would either have someone on the ground push it or, using the wall or ceiling, they would themselves pull or push the scaffolding to the new location. In either case, so as to save time, they did not dismount from the scaffolding. At the time of the accident, Kostrzewa was trying to move the scaffolding on which he and Zylinski were standing.

Additional facts from the summary judgment record are set forth in the sections of our discussion to which they pertain.

*Discussion.* 1. *Duty.* A general contractor has a duty to its subcontractors' employees if it "retains the right to control the work in any of its aspects, including the right to initiate and

---

[3]More specifically, Kostrzewa alleged that Suffolk was "negligent in that it failed to properly supervise the jobsite safety of the means, methods, techniques, sequences and procedures of the work performed by its [sub-]subcontractor."

[4]The wheels could be locked, but the two workers did not check to see if they were locked before the accident.

maintain safety measures and programs."[5] *Corsetti* v. *Stone Co.*, 396 Mass. 1, 10 (1985). See *Dilaveris* v. *W.T. Rich Co.*, 424 Mass. 9, 11-12 (1996). "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965). Whether a general contractor has sufficient control to be liable to a subcontractor's employee is a question of fact for the jury. *Corsetti* v. *Stone Co.*, *supra* at 11. It should not be determined on summary judgment unless, viewing the evidence in the light most favorable to the plaintiff, the undisputed material facts demonstrate, as matter of law, that the defendant did not exercise any "meaningful control, however minimal, over the subcontractor."[6] *Dilaveris* v. *W.T. Rich Co.*, *supra* at 11.

Viewed in the light most favorable to Kostrzewa, the summary judgment record showed the following:[7]

The contract between Suffolk and the building owner conferred on Suffolk general responsibility and control for the project, including responsibility for safety. See *Corsetti* v. *Stone Co.*, 396 Mass. at 11 n.8 (while a contract cannot vary or heighten any duty a contracting party may owe to a noncontracting party, it can be evidence of control). The contract provided that "[Suffolk] shall be solely responsible for and have control over construction means, methods, techniques, sequences and

---

[5]Although our previous cases have involved injured employees of subcontractors, we believe the principle is equally applicable here, where Kostrzewa was the employee of a sub-subcontractor. Liability should not turn on how many layers of subcontractors are involved (a matter over which the employee has no control and to which his ability to recover for his injuries should not be tied), but rather on the nature and extent of control retained or exercised by the general contractor.

[6]We note that all three of the cases relied on by the parties and the motion judge arose out of motions for judgment notwithstanding the verdict, not motions for summary judgment. See *Corsetti* v. *Stone Co.*, 396 Mass. at 4; *Dilaveris* v. *W.T. Rich Co.*, 424 Mass. at 10; *Foley* v. *Rust Intl.*, 901 F.2d 183 (1st Cir. 1990). Although we do not rest our decision on the procedural distinction, the later determination in those cases meant that the facts concerning control had been fully developed at trial, a circumstance that did not occur here.

[7]This is not to suggest that we think the record on control was strongly in favor of Kostrzewa. Indeed, there was much evidence to the contrary. However, we think that the evidence was sufficient to defeat summary judgment.

procedures and for coordinating all portions of the Work under the [c]ontract . . . ." In the area of safety, Suffolk was "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the [c]ontract." Moreover, Suffolk was required to "take reasonable precautions for safety of and shall provide reasonable protection to prevent damage, injury or loss to . . . employees on the Work and other persons who may be affected thereby." Suffolk was required to "erect and maintain . . . reasonable safeguards for safety and protection." The contract also allocated to Suffolk sole responsibility "for all injuries to persons . . . caused by or resulting from [its] negligence." Finally, the contract required Suffolk to "designate a responsible member of [its] organization at the site whose duty shall be the prevention of accidents." These various provisions of the contract indicate that Suffolk was to control the project, including all aspects of safety.[8]

In addition to the contract provisions, there was further evidence suggesting that Suffolk had more than minimal control over the safety aspects of the project. Suffolk had a project safety manager on site. Suffolk's safety manual required its management to "maintain an interest and participate in the safety program by checking on safety when visiting a Job site," placed responsibility on Suffolk's director of safety to perform periodic safety inspections of the project site, and required Suffolk's superintendent to conduct routine safety inspections and to address any safety issues.

With respect to the asbestos abatement work in particular, Suffolk, as required by the contract documents, created viewing windows so that supervisors could observe the work taking place in the containment areas, which were otherwise surrounded by an opaque barrier. It was not unusual for Suffolk employees to look through the windows. On the day of the accident, the

---

[8]Additional contractual provisions support the same conclusion: Under the subcontract between Suffolk and NASDI, Suffolk reserved the right to change the scope of the work performed by NASDI and to terminate the subcontract if NASDI failed to carry out the work in accordance with the contract documents (which included Suffolk's safety manual). Suffolk required that NASDI receive permission from Suffolk's superintendent prior to removing "any temporary rails or protection on the site." Suffolk also reserved the right to approve the full-time project manager and lead foreman of the subcontractor.

project's daily log (which was on a Suffolk form) showed that a Suffolk foreman performed "Supervision, Safety, [and] Security" on the project. The log shows only asbestos abatement work occurring on that day, allowing the inference that the Suffolk foreman was performing supervision, safety, and security in connection with the asbestos abatement work.[9] Furthermore, Suffolk required Superior to report weekly on its (Superior's) safety meetings. The report was submitted on Suffolk letterhead.

To be sure, Suffolk submitted evidence suggesting that it had little, if any, access to the containment areas or supervision over the asbestos removal work within those areas.[10] This, however, was not sufficient to satisfy Suffolk's burden on summary judgment. If Suffolk gave "directions for the work, furnishe[d] equipment for it, *or retain[ed] control over any part of it*," it had a duty to those working on the project. *Corsetti* v. *Stone Co.*, 396 Mass. at 9-10, quoting from Prosser, Torts § 71, at 469 (4th ed. 1971). Moreover, in assessing a motion for summary judgment our role is not to assess whether competing evidence favors the defendant; rather, summary judgment must be denied unless, viewing the evidence in the light most favorable to the plaintiff, the defendant is entitled to judgment as a matter of law. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

Finally, Suffolk argues that, even if it owed a duty to Kostrzewa, that obligation was contractually delegated to NASDI and Superior. We disagree. Suffolk's subcontract with NASDI required NASDI to assume responsibility for the safety of its own (NASDI's) employees.[11] It did not impose an obligation on NASDI with respect to Superior's employees. Although the

---

[9]Neither NASDI nor Superior is listed as having also performed duties relating to safety on that day, or on any other for which there is a log in the record.

[10]Access to the containment areas was restricted to licensed workers. Suffolk employees had not been inside the containment area on the day of the accident. Zylinski (Kostrzewa's coworker) had never seen a Suffolk employee looking through one of the viewing windows. It was Superior's responsibility to monitor the asbestos abatement work taking place in the containment areas. After the Occupational Safety and Health Administration (OSHA) investigated the accident at issue here, it cited Superior for failing to train its employees to move scaffolding properly and for improper scaffolding relocation.

[11]The subcontract stated: "Provision of a safe and healthy work site for

subcontract required NASDI to insert "this clause in each of its sub-contracts and enforce the same," no such provision is included in the letter agreement between NASDI and Superior. Thus, there is no contractual provision delegating sole responsibility for the safety of Superior's employees (such as Kostrzewa) to either NASDI or Superior.

2. *Breach.* We turn briefly to whether, as matter of law, Suffolk did not commit a breach of its duty towards Kostrzewa.[12] There was evidence that the asbestos workers regularly moved the scaffolding without dismounting. This, combined with the testimony that it was not unusual for Suffolk employees to be looking through the viewing windows into the containment areas, permitted an inference that Suffolk either knew or should have known that scaffolding was not being used safely and that Suffolk, as a result, was negligent in supervising the safety of the worksite. See 454 Code Mass. Regs. § 10.104(6)(f)-(h) (1993) (scaffolding shall only be moved with force applied as close to the base as possible, with no one on the scaffolding, and shall have its wheels locked when in place).

For the reasons set out above, we reverse the judgment.

*So ordered.*

Subcontractor's [i.e., NASDI's] employees (including the provision of all required training and/or appropriate personal protective equipment) is Subcontractor's [NASDI's] sole responsibility."

[12]This issue was not reached by the motion judge because he found no duty.