The plaintiffs, James L. Van Sicklin and Amy B. Van Sicklin, sought damages for breach of contract and negligence against the defendant, Nantucket Surveyors, LLC (NSL), stemming from a failed septic system. A Superior Court judge allowed NSL's motion for summary judgment as to all of the plaintiffs' claims, and subsequently denied the plaintiffs' motion for reconsideration. The plaintiffs now appeal therefrom. For the reasons that follow, we affirm.
Background. We first recite the relevant facts from the summary judgment record, and provide a framework of applicable law. In December, 2009, NSL conducted an inspection and soil investigation at the premises located at 32 Polpis Road, Nantucket, MA (property), which Gary Gregoire and Beth Simonsis (sellers) owned at the time. Gregoire hired NSL to determine soil conditions and to determine if the property's septic system complied with State Sanitary Code Title V (Title V) as required by the Massachusetts board of health. NSL determined that the septic system at the property was not in compliance with Title V and submitted a proposal to Gregoire to design a replacement septic system, conduct an "as-built inspection (open hole and installation)," and file a septic permit application with the Nantucket board of health. Gregoire accepted NSL's proposal and also hired RJ Perry Excavation, LLC (RJ Perry) to perform the excavation and installation of the new septic system.
The plaintiffs and sellers executed an escrow agreement on December 18, 2009, requiring a portion of the purchase price of the property to be held in escrow to pay for the installation, inspection, and certification of the new septic system.
NSL prepared a design plan for the replacement septic system, which explains NSL's obligations as it related to the as-built inspection (open hole and installation) that was referenced in the proposal. The design plan required NSL, in part, to: (1) "inspect the overexcavation prior to fill material and infiltrators being installed"; (2) "inspect and locate the installed system"; and (3) "[a]fter the initial inspection ... call the Nantucket [b]oard of [h]ealth for a final inspection." The design plan also states that "[o]nly after the final inspection is approved by the [b]oard of [h]ealth shall the system components be backfilled" and that "unsuitable soils shall be removed" and replaced with sand. The contract at issue consists of the proposal and the design plan.
The septic system was subsequently installed, and on March 30, 2010, the Nantucket board of health issued a certificate of compliance, indicating the septic system's compliance with Title V. In December, 2014, the septic system failed. The parties agree that "placement of construction and other debris in the leaching fields of the septic system by RJ Perry in violation of applicable regulations and NSL's plan" caused the system to fail.
The plaintiffs filed suit in the Superior Court against NSL and RJ Perry, alleging that NSL was liable for breach of contract and negligence as a result of its failure to inspect RJ Perry's work and ensure that RJ Perry used sand in the leaching fields in accordance with NSL's design.[3] NSL moved for summary judgement and the judge concluded that the contract at issue did not, as a matter of law, require NSL to inspect the fill installed by the contractor and that to establish a duty to inspect under a negligence theory, the plaintiffs needed to present expert evidence, which they did not do. The plaintiffs then filed a motion for reconsideration, which the judge denied. This appeal followed.
Discussion. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012). See also Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). We review grants of summary judgment de novo. See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 395 (2016). "[W]e view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party." Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 475 (2013).
1. Breach of contract claim. The plaintiffs first contest the judge's determination on summary judgment that NSL did not have a contractual duty to inspect the fill material. They claim that the judge could only reach this conclusion through speculation as the record did not support this interpretation of the as-built inspection requirement. We disagree.
The plain language of the proposal requires NSL to conduct an as-built inspection (open hole and installation). There is nothing in the proposal that requires NSL to inspect the fill materials used to cover the hole. See Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998) (where words of contract are unambiguous, they are construed in their ordinary and usual sense). The plaintiffs respond that the proposal must be read in conjunction with the design plan, which carries with it an inherent duty to inspect the septic system to ensure that it was "as-built" in accordance with the "as-built plans." Although we agree that the design plan was part of the contract, the design plan specifies that NSL was responsible for conducting two inspections. The first occurred, as the design plan required, after RJ Perry excavated the open hole and before the septic system was installed. The second inspection, as the design plan further required, occurred after RJ Perry installed the septic system into the hole.[4] The design plan further provided that "[o]nly after the final inspection is approved by the [b]oard of [h]ealth shall the system components be backfilled." Thus, by its plain terms, the design plan contemplated two inspections by NSL, after which the board of health would conduct a "final inspection," after which RJ Perry was to backfill the completed project. Neither the proposal nor the design plan obligated NSL to conduct a third inspection after the board of health conducted its final inspection and issued its approval. Where, as here, the language of the contract is clear, we cannot add an unstated obligation thereto. See Robbins v. Krock, 73 Mass. App. Ct. 134, 138-139 (2008), quoting Rogaris v. Albert, 431 Mass. 833, 835 (2000) ("the court gives full effect to all the terms expressed by the parties.... It is not the role of the court to alter the parties' agreement").
Alternatively, the plaintiffs point to the first provision in the design notes, found within the design plan, which states: "All work shall comply with the Massachusetts Environmental Code Title 5 and [t]own of Nantucket [b]oard of [h]ealth [r]egulations." Seizing on this language, the plaintiffs contend that NSL ignored certain regulatory and Title V requirements by allowing RJ Perry to use nonconforming soils. The argument is unavailing. Viewing the provisions of the design plan and proposal together in their entirety, it is clear that the first provision mandates that the design plan mandated that "work shall comply" with certain laws and regulations. The work referenced therein was performed by RJ Perry. The provision does not require the design engineer to inspect or oversee that portion of the work. To the contrary, subsequent provisions of the design plan specify the scope of NSL's inspection obligations, as discussed, supra.[5] There is no dispute that the design plan itself did not deviate from its stated requirements, and there is no dispute that NSL complied with its inspection obligations. Accordingly, as a matter of law, NSL had no contractual duty to inspect the fill materials installed by the contractor, RJ Perry. See Lexington Ins. Co. v. All Regions Chem. Labs, 419 Mass. 712, 713 (1995) ("The interpretation of a written contract ... is a question of law, not of fact").
2. Negligence claim. The plaintiffs also contend that the judge erred in granting summary judgment on the negligence claim based on the lack of expert testimony. "Where the [plaintiffs'] claim against [NSL] alleged [NSL's] failure to conform to the standard of care of a reasonable engineer, the plaintiff had to demonstrate the applicable professional engineering standard in this case" (emphasis omitted). Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 226 (1999). See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 329 (2012), quoting Klein v. Catalano, 386 Mass. 701, 708 (1982) ("Architects, like other professionals, ... are expected to exercise 'that skill and judgment which can be reasonably expected from similarly situated professionals.' ... Expert testimony is generally needed to establish this professional standard of care"). "Only in exceptional cases, ... where the malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence, do we not require expert testimony" (citations and quotations omitted). Id.
Here, the plaintiffs did not submit expert evidence in response to NSL's motion for summary judgment. This is not a case where the allegations against NSL involved conduct that was "so gross or obvious that laymen could have relied upon their common knowledge to recognize or infer [NSL's] negligence." Id. Rather, the standard of care and the alleged duties of NSL were "beyond the knowledge and experience of the average jury," and thus expert testimony defining that standard and those duties was required.[6] Atlas, 47 Mass. App. Ct. at 227. Compare Stewart v. Worcester Gas Light Co., 341 Mass. 425, 428, 433-434 (1960) (finding of negligence warranted, without expert testimony, where gas company closed shutoff on gas service pipe in plaintiff's cellar and removed meter but did not close pipe shutoff at street, which contributed to subsequent gas explosion in house), with Esturban v. Massachusetts Bay Transp. Auth., 68 Mass. App. Ct. 911, 911-912 (2007) (requiring expert testimony to demonstrate causal relationship between escalator's "narrow" design and plaintiff's injuries and whether design met industry standards and governmental regulations).[7] Moreover, there is no evidence in the summary judgment record that NSL was aware, or had a duty to be aware, of any deficiencies in the fill. See LeBlanc, 463 Mass. at 330 ("If the claim of negligence here were that the Design Team did not know, but should have known, of the deficiencies in the switchgear, we would conclude, given both the scope and the limitations of the Design Team's contractual responsibilities, that laymen could not reasonably infer without expert evidence that its failure to learn of the deficiencies constituted professional malpractice").[8]
For all of the reasons stated herein, the judgment is affirmed.[9]
So ordered.
Affirmed.

RJ Perry failed to answer the complaint and the court entered a default against it. The court subsequently entered judgment in favor of the plaintiffs and against RJ Perry. RJ Perry is not a party to this appeal.

The design plan states that "an open hole inspection by the design engineer is required prior to placing the fill material." The design plan specifies the manner in which the inspections shall proceed as follows: "The contractor shall call [NSL] to inspect the overexcavation prior to fill material and infiltrators being installed. The contractor shall call [NSL] a second time to inspect and locate the installed system. After the initial inspection [NSL] will call the Nantucket [b]oard of [h]ealth for a final inspection. Only after the final inspection is approved by the [b]oard of [h]ealth shall the system components be backfilled."

We discern no ambiguity in the provisions of the proposal and the design plan. Even assuming, arguendo, that some conflict were to exist between these competing provisions, the more specific provision -- here the provisions delineating NSL's inspection obligations -- controls. See Lembo v. Waters, 1 Mass. App. Ct. 227, 233 (1973), quoting A. Corbin, Contracts § 547, at 176 ("If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former").

The plaintiffs did not seek additional time to pursue discovery pursuant to Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974).

NSL did not act as a contractor and thus did not have a contractor-subcontractor relationship with RJ Perry. Compare Kostrzewa v. Suffolk Constr. Co., 73 Mass. App. Ct. 377, 378-380 (2008) (discussing contractor-subcontractor relationship and related duties).

For the reasons discussed, supra, as well as those articulated by the judge in her "[o]rder on plaintiffs' motion for reconsideration of June 1, 2017[,] [o]rder on summary judgment," the judge did not abuse her discretion in denying the plaintiffs' motion for reconsideration.

To the extent that we have not specifically addressed subsidiary arguments in the parties' briefs, they have been considered, and do not merit relief or require further discussion. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).